## No. 9944.

### City of New Orleans vs. Joseph A. Shakspeare et als.

Possession " under the title of owner " is one of the essential conditions in the prescription of thirty years by which the ownership of immovables can be acquired without any need of title or possession in good faith. C. C., Art. 3500.

If it appears that the party who pleads the prescription of thirty years acknowledged at any time before his possession, covers a space of thirty years, that the title of ownership was in his opponent, his plea is defeated, and his alleged ownership is destroyed.

The prescription of ten years, established by Art. 853 of the Civil Code, by which a possession under an erroneous fixing of boundary lines, prescribes the title of his opponent who sues for a rectification of an erroneous boundary line, applies only in an action of boundary, and not in a petitory action, in which the prescription of thirty years alone can be invoked in support of ownership without a title or possession in good faith.

| 39 | 1033 |
|----|------|
| 51 | 121 |

| 39 | 1033 |
|----|------|
| 452 | 194 |

| 39 | 1063 |
|-----|------|
| 121 | 521 |
| 121 | 814 |

| 39 | 1033 |
|-----|------|
| 125 | 514 |

**A**PPEAL from the Civil District Court, Parish of Orleans.
*Houston*, J.

---

*Walter H. Rogers*, City Attorney, and *W. F. & D. C. Mellen*, for Plaintiff and Appellee.

1. He who would sustain his plea of the prescription of thirty years must show, by satisfactory evidence, a continuous and uninterrupted public and unequivocal possession, under the title of owner, for the full term of thirty years. C. C. 3500 [3465], 3436.

2. The burden of proof is on him who pleads this prescription to prove it, and he must show, by evidence satisfactory to the court, the beginning of the possession adverse to

City vs. Shakspeare et als.

that of the true owner, that the court may determine if the full term of thirty years has elapsed; and where the evidence has failed to establish the beginning of such posses- sion, but leaves it doubtful, whether the possession has been slightly over or slightly under thirty years, the plea cannot be maintained.

3. To possess under the title of owner one must have the natural or civil possession of the lands, and at the same time the intention to possess as owner—that is, the intention of claiming title to the land in possession, though it be beyond the true line of the party possessing, whenever and as often as any other person shall set up or claim title thereto. C. C. 3436, 3443, 3454, 3499, 3500, 3501, 3505, 3486-2, 3487.

4. If one, honestly (honestly though mistakenly) believing that his lot is bounded by a certain fence, take possession up to the fence, and hold possession thereof under the be- lief that he is owner, but afterwards, within thirty years from the beginning of his pos- session, discover that the fence is not the true line, but is on the lot of his neighbor, and acknowledge, or assent to, or silently acquiesce in, or fail to dispute the claim and title thereto set up by his neighbor to the land beyond the true line, or fail to assert his own title thereto, or propose to purchase the title thereto from the true owner, he has not held possession under the title of owner for thirty years, and his plea must be over- ruled. Frederick vs. Brulard, 1 Ann. 382, 383; Babineau vs. Cormier, 1 N. S. 456, 460-1; Broussard vs. Duhamel, 3 N. S. 11, 15.

5. If one in possession, called on by the true owner to vacate the premises within thirty years from the beginning of his possession, do not claim title in himself, or deny it in the person requesting him to vacate, but simply reply that vacating the premises will be an inconvenience to him, because he will have iron castings to remove, and at the same time know that the person requesting him to vacate is the true owner, prescription will be interrupted. C. C. 3520 and articles before cited; Gibbs vs. Nelson & Donalson, 16 Ann. 275; Baker vs. Pena, 20 Ann. 52; Wilson vs. Bannen, 1 R. 556, 557.

6. If one in possession, knowing another party to be the true owner, within thirty years from the beginning of his possession of such property, offer to purchase the property from the true owner, prescription will be interrupted.

7. In respect to public rights the city of New Orleans, as a municipal corporation, is not within the ordinary rules of prescription. A lot belonging to the second municipality of New Orleans became the property of the city by the act of consolidation of 1852. It was formerly used as a public pound; afterwards for the workshops and repair shops of the city, and continued to be so used up to the 9th day of November, 1880, when it was leased by the city to Jacques Levy. The long use of the lot as a public pound and for the public work of the city was a dedication of the lot to public purposes and rendered it non-prescriptible. The lease to Levy did not destroy its character. The public na- ture of the lot affected every part of it; and defendants cannot be permitted to prescribe against that part occupied by them, even though they may have occupied for more than thirty years. 2 Dill. Mun. Corp., § 675; Parish of Plaquemines vs. Fulhouze, 30 Ann. 64.

8. The defendants having paid no taxes on the property in dispute, and having made no improvements thereon, are not in a condition to invoke an estoppel en pais against the plaintiff's suit for possession.

9. The fact that the lease to Levy was for a term longer than nine years did not constitute it a contract of sale. The intentions of the parties were clearly to make a contract of lease. The laws of this State do not limit the duration of a lease, provided it be not perpetual. The action was properly brought in the name of the city. Pothier "Traite Du Contract de Louage," part 1, ch. 1, No. 4, and part 1, ch. 2, No. 27; Troplong "Du Contrat de Louage," No. 4 and No. 22; Laurent, tome 25, sec. 4, et seq.; C. C. 2674 et seq.

City vs. Shakspeare et als.

*E. Howard McCaleb*, for Defendants and Appellees :

1. The interruption of prescription only dates from the service of citation, or defendant's appearance and answer; and not from the filing of the petition. 8 N. S. 120 ; 6 R. 142 ; 36 Ann. 779.
2. A commercial partnership cannot own immovable property ; the partners are joint owners. 3 L. 494 ; 23 Ann. 419 ; 10 L. 420 ; 7 M 244.
3. Thirty years continuous, uninterrupted, public and unequivocal poesession of real estate, as owners, gives title, in Louisiana, without the possession being in good faith. R. C. C. 3475, 3499, 3500, 3501, 3502, 3503 ; 24 Ann. 452. If the possession commenced in good faith, subsequent bad faith will not prevent the prescription. R. C. C. 3482.
4. Ten years' adverse possession, under an erroneous boundary line, prevents rectification of the error by prescription. R. C. C. 852 and 853 ; 7 N. S. 117 ; 20 Ann. 343.
5. A dedication of property to public use cannot be inferred, it must be established by evidence sufficient to exclude every other hypothesis but that of dedication. 5 L. 132 ; 9 L. 153 18 L. 122, 286 ; 19 L. 62 ; 10 R. 357 ; 3 Ann. 287 ; 7 Ann. 233 ; 7 Ann. 498.

A sale, or a lease of property, to a private person for private purposes, by a municipal corporation, conclusively establishes the fact that such property is not a *locus publicus* and *hors de commerce*.

6. In a petitory action, plaintiff must recover on the strength of his own title rather than on the weakness of his adversary's ; and where a better title is shown, in a third person; the action will be defeated. 22 Ann. 57; 3 R. 206 ; 10 R. 505.
7. Where a lot is leased for a period of fifty years, and the consideration or rent is payable cash in advance, such contract is a sale and not a lease ; for the essential character of a lease, in which it principally differs from a sale, is that it only has a temporary or limited duration, and the price or rent should be divided in annuities or short periodical installments, representing the fruits or revenues of the thing leased. Thus, the cession of the enjoyment of a thing during a certain number of years, for a unique price, is a sale and not a lease. L'Argentre, Cout. Bret. sur l'art. 52, note 2, n. 5 Fonmaur, Lods et Ventes, Ch. 18, n. 528 ; Troplong, Louage, t. 1, n. 22 ; Troplong, de la Vente, t. 1, n. 204 ; Duranton, t. 17, n. 17 ; Duvergier, Louage. t. n. 35 ; Pothier, Louage, n. 4, Marcade sur l'art. 1713 ; C. N. t. 6, p. 423 *et seq.*

---

The opinion of the Court was delivered by

POCHÉ, J. This is a petitory action by which the city seeks to recover a piece of immovable property alleged to have been in the illegal possession of the defendants for twenty-seven years, and rents for the use of the same at the rate of $100 per annum for twenty-seven years.

The defense is the prescription of ten and of thirty years.

The district court sustained the plea of prescription of thirty years, and the city appeals.

There is no dispute as to the chain of titles under which the city claims the ownership of the property, and the discussion is therefore restricted to the question of prescription.

The undisputed facts in the record are that the lot of ground in suit originally formed part of a larger lot purchased by the city, adjoining

a lot owned by the defendants, and on which they and their ancestors or predecessors have operated a foundry for many years.

It appears that, between the years 1850 and 1852, up to which time the adjoining lots of the respective parties had remained opened, a partition fence was erected by the municipal authorities on what was then supposed to be approximately the boundary line between the adjacent estates, and that it was subsequently discovered that the fence had been placed about 32 feet within the city's side of the correct line, thus leaving that quantity of land of the city on the side of the defendants.

But in the meantime, beginning from the year that the fence had been erected, the defendants had occupied the strip of land in dispute, using it to dispose of the cinders falling from their foundry boilers and also as a place to cool and keep their castings and other materials of ordinary use in and about a foundry. That occupation had been continuous and uninterrupted up to the date of the present suit, which was begun in December, 1880.

Defendants date their possession from November, 1850, and plaintiff contends that there is no positive evidence to determine, with legal certainty, the beginning of their possession. Plaintiff also denies that the defendants' possession was under the title of owners.

1st. As this last contention is the pivotal question in the case it calls for our immediate attention.

Under our system of laws the ownership of immovables may be acquired by the prescription of thirty years, without the need of title or of possession in good faith. C. C. Art. 3499.

But " the possession on which this prescription is founded must be continuous and uninterrupted during all the time ; it must be public and unequivocal, and under the title of owner." Article 3500 Civil Code.

The record must, therefore, be consulted in order to ascertain the true character of the possession of the defendants, irrespective of the time during which it continued.

From the testimony of two of the members of the defendant firm, it is contended that when their possession began they believed that the lot in suit was their own property, or, in other words, that the partition fence had been placed on the correct boundary line between theirs and the city's adjoining lot, and their possession, although predicated on an erroneous belief, might be held as long as the belief lasted, to be under the title of owner, *animo domini*.

But it appears that the city authorities did not have a similar understanding of the condition of things relative to the lot of ground in suit. Hence, in 1872, it was contemplated by the city surveyor to erect thereon a stable and appurtenances for the use of the city. In furtherance of that intention, one of his officials called on one of the defendants, informed him of the fact, and requested him to remove the things belonging to the foundry, and which were lying about on the piece of ground on which the stable was to be erected. The natural answer to such a message by anyone who claimed to be the owner of the property would have been a vigorous objection to such use of his property or for any purpose by another. But in this instance the defendant merely suggested that such a removal of his things would greatly inconvenience the foundry, and in ending the conversation, offered his own stable for the use contemplated by the officials of the projected stable, the building of which would thus be obviated.

That incident of itself goes a great way to the conclusion that the defendants' possession was, in their own minds, not under the title of owner, but that it was precarious and by sufferance, under the superior and exclusive title which the city held.

But in another part of his testimony, in answering the question as to the time when it was ascertained that the city laid claim to the lot in dispute, the same defendant, evidently more honest than ambitious, made the following candid statement :

"We knew nothing of it; I heard nothing of it until they were some years ago speaking about building a lockup there, and it was surveyed at that time. It was only then that we knew that we were on the city's ground."

And in another place, he says : "This was about eight to ten years ago. It was all open the whole block. It was all vacant property then, when we took possession. The fence was put there in 1850. I always thought we did own the property until after the survey."

While another member of the firm was testifying in his own behalf, he was asked the following question :

"After Mr. Shakspeare's death (father of the present defendant, J. A. Shakspeare), what was the name of the copartnership that owned the lot ?" (the lot in dispute), to which he very naively answered :

"The city owned it."

Of course the witness misunderstood the question, but his answer is, for that very reason, more significant, as it not only shows, but clearly demonstrates the fact that the witness knew that the lot in question was the property of the city, and that the possession of the

firm was precarious and by sufferance, under the admitted ownership of the city.

But any doubt which might still linger in the judicial mind on the subject is altogether dispelled by a consideration of the following incident:

In the beginning of November, 1880, the city executed a lease for a term of fifty years, and for a rental of $1200 to one Jacques Levy, of the entire lot purchased from W. H. Avery in April, 1848 including the parcel of land now in suit. As soon as the passage of the ordinance was made known to the defendants herein; on the very next day, one of the members of the firm called at the City Hall, and offered, in the name of his firm, to the then Mayor, the sum of $1500 for the same and identical privileges which had been conferred to, or obtained by Levy, under the terms of the lease, which, however, had already been signed by the Mayor. One of the reasons suggested by the defendant for his anxiety to secure that lease was the fact that his firm, or foundry, had had the use of the fragment of the whole lot, which is now in dispute, for nearly thirty years.

The irresistible legal conclusion which must be deducted from those truthful and honest utterances of the defendants themselves, is that their possession was.not under the title of owners, at least from the year 1872. And their testimony fairly justifies the inference that they never, for a moment, doubted that the legal ownership of that parcel of land was in the city. If the message from the city surveyor, in reference to the projected stable, was the first information, or a revelation, of the ownership of the city, hitherto unknown to the firm, why is it that the interviewed copartner did not even express or manifest the slightest surprise at such an extraordinary proceeding, if he understood that the official was calling on his firm to relinquish their own property for the use of the city ?

On the contrary, his only suggestion was that the proposed removal of his castings and other things from the ground would greatly " inconvenience him," and the inconvenience was so great that he actually offered the use of his own stable for the housing of the city officials' horses as the shortest way out of the difficulty.

Is this the language or course of dealing of any owner in the face of a cool and deliberate proposition to oust him of the possession of property which he claimed adversely to the world to be his own ?

But such conduct is natural, and is in logical keeping with the subsequently-avowed knowledge of the defendants that "they were on the city's ground," that after the survey they knew that they were not

owners, and with the offer made in 1880 of an advanced price on the Levy lease, as a means of quieting their possession of the property.

We do not mean to hold that knowledge or belief that title is in another of itself defeats the prescription of thirty years; but such knowledge or belief, when accompanied by acts or conduct indicating acknowledgment of the adverse title justifies the legal conclusion that the party pleading that prescription did not claim to be owner, and that his possession is not under the title of owner.

From defendants' whole conduct, as explained by their own testimony, it appears clearly, to our mind, that they never lost sight of the city's superior and exclusive right of ownership of the ground which they occupied, to which they admittedly subordinated their right of possession. Now, as the title of ownership is a unit, indivisible in its nature between two hostile or adverse claims to the same right, and as ownership in one person is absolutely incompatible, and cannot co-exist with ownership of the same thing in another person, it follows that defendants' possession was avowedly not under the title of ownership. Thus their case is stripped of one of the essential and indispensable conditions which must characterize the possession on which the prescription of thirty years is founded. C. C. 3500, Wilson vs. Baumen, 1 Rob. 556; Dodsman vs. Barrow, 11 Ann. 87.

We, therefore, hold that the plea of prescription of thirty years is not sustained by the evidence, and not made out under the law.

These conclusions find additional support in the fact that defendants have never had the property in dispute assessed in their name, have never paid taxes on the same, and have never placed any improvements, not as much as a shed, thereon.

2d. The plea of prescription of ten years is predicated on the provisions of Art. 853 of the Civil Code, which reads:

" If the boundaries have been fixed according to a common title, or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed be acquired by an adverse possession of ten years, if the parties are present, and twenty years, if absent."

But in the case in hand we are dealing with a petitory action, and not with an action of boundary, in which plaintiff would be seeking to rectify an erroneous survey. The article is found in the Code under the title of " Fixing the limits and of surveying of lands;" and it must be construed with reference to other articles under the same title which treat of the same subject-matter.

The pivotal article under that title, Art. 833, provides that "whether the limits be fixed judicially or extra judicially, it must be done by a sworn surveyor of this State, who shall be bound to make a *procès verbal* of his work in the presence of two witnesses, called for the purpose, who shall sign the *procès verbal* with him." *    *

There is no pretence here that such fixing of limits preceded the location of the partition fence erected by the commissary of the municipality, at the time which he describes as being some time before the consolidation (in 1852.)

It is in proof that the surveyor fixed no stakes or made no marks indicating the precise boundary line, and that the commissary built the fence " as near the line as he could recollect," and there is no proof, or even an intimation, that the work of the city surveyor, such as it may have been, was ever accepted by the parties as settling the division line.

A similar question came up before this court in the case of Gray vs. Corvillon, 12 Ann. 730, and similar views were therein entertained and enforced.

We, therefore, conclude that the provisions of article 853 have no possible application to the present contention, in which the prescription of thirty years alone could be considered. Hence the plea of prescription of ten years must also fail.

3d.   Defendants also make the point that the contract entered into between the city and Jacques Levy on November 9, 1880, although styled a lease, was in law and in reality a sale, and that, therefore, the city has no more claim to, and has no interest to revindicate, the property in dispute.

That contention rests on the fact that the term of the pretended lease is fifty years, and the whole rental was paid in advance, and not by yearly, or shorter, installments.

A careful examination of the contract leaves us under the impression that counsel can hardly be serious in that contention.

Our Code defines the contract of lease as one " by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time for a certain stipulated price, which the other binds himself to pay him." Art. 2674.

In this case the city leases for a term of fifty years and for a stipulated price, which the lessee paid in cash.

And the contract contains the further stipulation that, at the expiration of the lease, the improvements on the property shall revert to the city on certain stipulations not necessary to enumerate here.

State ex rel. Heath et al. vs. Judge et als.

The manifest intention of the parties was to enter into a contract of lease, and we must decline to construe them into other and different intentions.

With these views we conclude that the case is with the city, and that the defendants must be held liable for rents during their entire occupation of the premises. From the record, it appears that the rents are worth about ten dollars per annum. As stated in this opinion, the evidence is not conclusive as to the precise time when defendants' possession began ; it was between the years 1850 and 1852. For the purposes of rentals we fix it as beginning in January, 1852.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that there be judgment in favor of the city of New Orleans decreeing her to be the lawful owner of the property described in her petition in this case, and ordering the Civil Sheriff of the parish of Orleans to place her in possession thereof, and condemning defendants to pay rent on said property at the rate of ten dollars per annum from the 1st of January, 1852, until the property is delivered or restored to the city, and that defendants pay costs in both courts.