(84 South. 212)

No. 22129.

LAURENT et al. v. LAURENT et al.

(April 5, 1920.)

*(Syllabus by the Court.)*

1. ESTOPPEL ⟨⟩22(2) — DESCRIPTION OF BOUNDARY IN ACT OF SALE HELD NOT TO ESTOP HEIRS AS BETWEEN THEMSELVES.

A sale by heirs of land held in common, and the acreage of which is fixed, where one of the boundaries is described as of a certain bearing and running with the boundary of a supposed adjacent tract, belonging to a coheir, does not estop such heirs to bring suit against their coheir to fix the boundary between his tract and the land sold, when it appears that, by an agreement contemporaneous with the sale, some such proceeding was contemplated by all the parties thereto, and that, by reason of error and conflict between the description of the course of the boundary of the land sold and that of the tract owned by the coheir, there appears to be land outside of such tract, and not included, as to acreage, in the land sold, and for which, if found, the purchaser of such land has agreed to pay an additional price.

2. ADVERSE POSSESSION ⟨⟩66(1), 68 — PRESCRIPTION; NO PRESCRIPTION WHERE BOUNDARY NEVER DETERMINED; REQUISITE PROOF IN PLEAS OF PRESCRIPTION OF 30 YEARS AND OF 10 YEARS STATED.

As against an action of boundary, where the boundary has never been determined, there is no prescription; and where a boundary has previously been established, the plea of prescription of 30 years must be sustained by proof of possession under title as owner, as provided by Civil Code, art. 3500, and that of 10 years by proof of possession as holder in good faith of a just title, as provided by Civ. Code, art. 3478 et seq.

3. EVIDENCE ⟨⟩460(6)—PAROL EVIDENCE ADMISSIBLE TO ESTABLISH DOUBTFUL CORNER, BUT NOT TO CONTRADICT INSTRUMENT.

In an action to fix a boundary, while parol evidence is admissible to establish the position of a doubtful corner or monument, it should not be admitted to contradict the plain and unambiguous calls as to course and distance, of the title upon which one of the litigants relies, supplemented by a sketch attached thereto, and particularly where they are consistent with and tie in with the other calls of such title.

Appeal from Seventeenth Judicial District Court, Parish of Vermilion, William P. Edwards, Judge.

Action by Paul Laurent and others against Jules G. Laurent and others. Judgment for plaintiffs, and defendant Jules G. Laurent appeals. Affirmed.

John Nugier, of Abbeville, for appellant. J. R. Kitchell, of Abbeville, for appellees.

Statement of the Case.

MONROE, C. J. This action is brought by some of the children and heirs of Gustave Laurent and his wife against other heirs and the "Hermosa Plantation" (a company to which all of the heirs made a sale of a portion of the land inherited by them and held in common) for the establishment of the eastern boundary of a tract which had been sold by the decedent, Gustave Laurent, to his son, the defendant Jules G. Laurent; the circumstances out of which the litigation has arisen, broadly stated, being as follows:

Gustave Laurent owned a large body of land lying in sections 27, 28, and 33 of township 11 S., range 3 W., southeastern district of Louisiana, parish of Vermilion, and had his residence on a portion of it, lying in section 27. Having (in 1880) sold a tract, lying in sections 28 and 33, to his son Felix (a defendant herein), he (in 1883) sold an adjoining tract (to the eastward) to his son, Jules (the main defendant), by an instrument which appears to have been lost or destroyed, and the record of which was partially destroyed in the burning of the courthouse of Calcasieu parish. Another instrument, purporting to be a duplicate, and bearing date August 18, 1885, was therefore substituted

for the original, and the tract sold is therein described as (translating from the French in which it is written):

"A certain tract of land fronting on Lake Arthur, in the parish of Vermilion, and described as follows, according to a survey by Geo. O. Elms, deputy United States surveyor, of date March 13, 1885, to wit: At a variation of 7° 55' E., beginning at a tupelo gum tree on the bank of Lake Arthur, thence 84¼° E., 2.10, S. 22¼° E., 5.00, set a post, and thence, S. 1° 15' W. to the back line of G. Laurent's land. The said tract is bounded on the north by Lake Arthur, on the east by the vendor, on the south by unknown owners, and on the west by Felix Laurent, and consists of 200 arpents, more or less, being well known to the purchaser, who declares that he accepts without other formalities than the above delimitation."

A rough sketch (presumably of the survey by Elms) of the eastern boundary shows the courses as above given, save that, describing them as from south to north, instead of from north to south, it reverses them thus, "N. 1° 15' E., "instead of S. 1° 15' W.," etc.

The court appointed a surveyor, who returned a plat and report showing that he had begun his survey at a certain point, A, on the shore of Lake Arthur, to which he was directed by some of the plaintiffs as a point at which there had, many years ago, been a tupelo gum tree, of which, however, he found no trace, and his field notes thence read, in part, as follows:

"From A—starting point, pointed out by William Laurent and others—S. 82° 15' E., 2.10, to post or stake set to B. At that time, Mr. Albert Laurent [one of the defendants] came to me and told me that he could show me the tupelo gum mentioned in the deed. I asked him to point it out to me, and he pointed a tupelo gum, near by, standing a few feet in the water from the dry land. I went to the tree and found marks thereon, and that the Hermosa's west boundary line ran to it. I could not identify the marks on the tree as surveyor's marks. Going back to stake B, I ran N. 19° W., 1 chain, 65 links, to the tree shown by Albert Laurent. Going back again to B, I proceeded with the line commenced as follows: S. 22° 15' E., 5.66 [to point marked C on plat], found house yard of Jules Laurent, a china tree, east 6 feet, 1 foot in diameter, 4.78 out of yard; 5.00, set stake, whence Jules Laurent's house N. 36° 30' W.; about ½ chain, his barn center S. 33° E., about 1 chain 25 links. I then ran at right angles to the line claimed by Jules Laurent, now the west boundary of the Hermosa Plantation, whence east, about 6 feet, found a live oak tree, 18 inches, with marks. I went back to C, on my line, and ran S. 1° 15' W.; at 20 ran again to the Hermosa line 2.83; found the Hermosa line bearing at this point as well as from the live oak 1° 15' E., satisfied me that the line was run that way through an error; at 29.19 intersect south boundary of section 28 and north boundary of 33, T. 11 S., R. 3 west," etc.

Plaintiffs filed a motion alleging that the boundary had been correctly established by the surveyor, and praying that it be confirmed. Defendants (with the exception of the Hermosa Company) opposed the confirmation on the grounds: (1) That the survey should have started from the tupelo tree pointed out by Albert Laurent; (2) that the last call in the deed from Gustave to Jules Laurent (S. 1° 15' W) reads in that way through an error admitted by the draftsman, and should have read S. 1° 15' E., and that the surveyor appointed by the court should have made the correction and run that course S. 1° 15' E.

Upon the trial, some of the witnesses testified that there had been, at one time, a tupelo tree, at the point A, from which the surveyor started, and which they assumed to establish by planting a pole in the water though they found neither tree, stump, nor roots, to indicate that a tree had ever been there; and other witnesses testified that the tree pointed out by Albert Laurent had been there for many years, and was the established corner of the tract, a fact which all of the heirs recognized in an act of sale (and annexed plat) to the Hermosa Company of land lying to the east of Jules Laurent, which exhibits give the courses (from south to north) of the west boundary of the land sold as follows (from stake on south line of section 28 and east line of Jules Laurent's tract):

"Thence north 1° 15′ west, with Jules Laurent's line, 2,000 feet, to a stake for a corner of this and the Jules Laurent tract, from which an 18″ live oak south 65° east, 7 feet; thence, with the line of said Jules Laurent's tract, north 22° west, 330 feet, to a stake for a corner; thence north 82¼° west, 149 feet to a gum tree, in the edge of Lake Arthur for corner," etc.

The plat of survey attached to the act, however, shows the first course above given (in reverse) as "S. 1° 15′ W."

Defendant attempted to show the alleged error in that course, as given in the last call of his title, by testifying that the surveyor told him what the course was, and that he himself took an observation through the transit; but his testimony on that point is wholly unsatisfactory. He also attempted to show adverse possession, within the boundaries claimed by him, for 30 years or more, but was unsuccessful, we think, in showing such possession for even 10 years. His father died in 1887, and the possession of the property of the succession devolved on the widow in community, as owner and usufructuary. Jules Laurent became her agent, and so remained until her death, in 1911 or 1912, and it is doubtful whether there was ever a fence between his land and that of the succession, save in the vicinity of his residence, and such fence as there may have been he seems to have moved, from time to time, to suit his convenience, but with no assertion of title beyond the boundaries established by his deed of 1885, which was executed within 30 years of the date upon which this suit was instituted.

According to the survey, made by order of the district court, if the line beginning at the point A on the plat, were adopted, there would be left to Jules Laurent 56.96 acres less than the acreage ("200 arpents," or 168 acres, "more or less") called for by his title; if the line beginning at the tupelo tree, as found on the bank of the lake, running thence the two first courses as called for by his title, and thence S. 1° 15′ west, be adopted, there will be left to him 26 acres less than as so called for; and, if the entire line for which he contends be adopted, he will still be short, it is said, some 15 or 16 acres; but, as shown by the testimony, that may be accounted for by the fact that the township line has been moved up by a resurvey under orders of the government.

The sale, however, was made according to boundaries, or per aversionem, and not by acreage. Moreover, the acreage was merely estimated, "more or less," and the deed expressly declares that the purchaser accepts the land as "delimited."

We find in the record the following admission concerning the west boundary of the tract sold to the "Hermosa Plantation," to wit:

"The plaintiffs in this case, through their counsel, admit that the western boundary of the land sold to Hermosa Plantation, by the heirs of Gustave Laurent, as shown by the deed filed in this suit, and as surveyed by J. T. Hervey, is a true and correct western boundary line of the property purchased by said Hermosa Plantation, by Mr. J. T. Hervey (sic), surveyor, Mr. Babbit, Mr. Everette, and Mr. Raphael Broussard, all surveyors, and representing the parties to this litigation; said last three named surveyors having checked the line, as established by Hervey, and agreed that the same was correct, as shown by the description in the act of sale from the heirs of Gustave Laurent and his wife to the Hermosa Plantation.

"This admission, however, is to in no way affect the dispute in this case, between plaintiffs and defendants, as to the real eastern boundary of the land sold to Jules Laurent."

The judge a quo amended the report of the surveyor appointed by him by directing that the boundary in question be fixed as starting from the point marked S and the word "Tupelo" on the plat of said survey (instead of from the point marked A), and running thence in accordance with the courses set forth in the act of sale from Gustave Laurent to-

Jules G. Laurent of date August 18, 1885; and he further decreed:

"That the bearing of that portion of the western boundary of the land sold to the Hermosa Plantation, designated on the plat annexed to the deed from the heirs of Gustave Laurent and Carmelite Hebert, above described herein as being south 1° 15' west by J. F. Hervey, C. E., be and the same is hereby corrected and amended, so as to read 'north 1° 15' west,' so as to conform with the description of said boundary as given in the body of said deed, and with the direction of said boundary, as fixed by said surveyor, on the ground."

The plea of prescription, incorporated in the answer, was overruled. The plea of estoppel appears to have been ignored.

The costs were directed to be paid by plaintiff and defendants in equal proportions, save as to the Hermosa Company, which was relieved of all costs. The defendant Jules G. Laurent alone has appealed. The plaintiffs have moved to annul the judgment, so as to start the boundary in dispute from the point A, as reported by the surveyor, and to condemn the defendant Jules G. Laurent to pay all costs. Agreeably to motions herein filed, suggesting the death of William Laurent (one of the original plaintiffs), his heirs, Andrew W. Laurent, William H. Laurent, Luke A. Laurent, and Edwin E. Laurent, have been made parties plaintiff in his stead, and Luc Ledoux has been made party plaintiff in his stead, as curator of the interdict, Martha Laurent, and, on suggestion of the death of Felix Laurent (original defendant), Edmond Laurent, his heir, has been made party defendant in his stead.

### Opinion.

[1] It does not follow, because all the heirs, including Jules Laurent, joined in a sale of their property by an act which gives the bearings of the west boundary of the property sold as "north 1° 15' west, with said Jules Laurent's line, that they are therefore estopped, as between themselves, to dispute the correctness of the bearings thus inferentially attributed to Jules Laurent's line. It is true that the act of sale to the Hermosa Company reads as above stated; but the plat of survey, which is attached thereto, shows the bearing in question (reversed) as "S. 1° 15' W.," thus conflicting with the bearing given in the act, and corroborating that given in the act and plat by which Jules Laurent acquired his land. The discrepancy thus mentioned (which occurs in the survey of Hervey) seems to have suggested some doubt as to the proper location of Jules Laurent's line, and several attempts were made to adjust the matter amicably, but without success. As the heirs, including Jules Laurent, were, however, willing, if not anxious, to make the sale to the Hermosa Company, and that company was ready to buy, all parties finally agreed to make, and did make, the sale, supplemented by another contract of the same date, containing a preamble reciting the fact that such sale had been made, and further reading as follows:

"Whereas, J. F. Hervey, C. E., made a survey of said described property and a plat which is attached to said act of sale, showing the boundaries and description thereof and the acreage to be, according to said survey and plat, 416.23 acres:

"Now, therefore, it is agreed * * * that, if there is found to be more than 416.23 acres in said tract of land, * * * then * * * the said Hermosa Plantation agrees to purchase and pay for, at $50 an acre, such number of acres, in addition to said 416.23, as shall have been determined to be within said tract and boundaries, as shown by such official survey, and the said vendors agree to sell," etc.

[2, 3] So far, then, from the sale to the Hermosa Company operating to estop the bringing of this suit and provoking an "official survey," it seems to have been expressly agreed, as a part of that contract, that some such a step should be taken. We are therefore of opinion that the plea of estoppel is not well founded. And the same may be

said of the plea of prescription. As against an action of boundary, where no boundary has previously been fixed, there is no prescription. C. C. art. 825. And where a boundary, previously determined is to be reestablished, the prescription of 30 years must be sustained by proof of possession "under the title of owner," as required by C. C. art. 3500, and the prescription of 10 years by proof of possession under a just title, as owner, as provided by C. C. art. 3478 et seq. The question whether the boundary here in question has ever been fixed, within the meaning of the law relating to the prescription of the action, has not been raised by the counsel, and need not be considered. It is not contended at all events, that it was fixed or known prior to the act of sale from Gustave Laurent to Jules G. Laurent, of August 19, 1885; nor, is it contended that the prescription of 30 years, here pleaded, began to run prior to that date. In any event, such prescription acquirendi causa must be supported by continuous, uninterrupted, public, and unequivocal possession during all the time "under the title of owner." C. C. art. 3500. And the prescription of 10 years, acquirendi causa, must be supported by a just title, acquired in good faith, and continuous, uninterrupted, peaceable, public, and unequivocal possession, as owner, during that period. C. C. art. 3478 et seq. But Mr. Laurent has never, since August 9, 1885, asserted any other ownership or possession, save under the title which he then acquired and which, in terms, limits those rights to land lying to the westward of a line running from a tupelo gum tree, mainly, S. 1° 15′ west, to the rear of his vendor's land, and the land here in dispute lies to the eastward of that line. He himself says that he "had lined it" (his eastern boundary) "on the Elms survey." In other words, that he never claimed to be the owner, or to be in possession as owner, of any land to the eastward of the line established by Elms as his eastern boundary, and which according to his title and the sketch thereto attached, runs S. 1° 15′ west. If it be said that he interpreted the Elms survey to mean that his eastern boundary ran S. 1° 15′ E., and that his so thinking enabled him to begin his possession, as owner, for the purposes of the prescription of 30 years, the answer is that this suit was instituted in May, 1915, and that the prescription of 30 years was thereby interrupted, to which it may be added that the title set up by him is not a just title, with respect to any land lying to the eastward of the boundary therein described, and hence does not meet the requirement of the prescription of 10 years acquirendi causa.

On the merits, we agree with the trial judge as to the point of departure and courses adopted and followed in the survey ordered by him. The evidence, we think, is conclusive to the effect that the proper point of departure in the survey ordered by the judge, was the tupelo gum tree, designated by the witness Albert Laurent, and from that point the calls for the courses and distances were unambiguous and consistent with the other calls of the title. The oral testimony to the effect that the surveyor told the defendant, at the time, that one of the courses was different from that expressed in defendant's title and upon the sketch attached thereto, was inadmissible, and, when admitted, unconvincing.

We imagine that our learned Brother, in ordering the correction of the description of the west boundary of the land sold to the Hermosa Company, overlooked the agreement of the parties (quoted in the preceding statement of the case) upon the subject of that boundary. But, as the Hermosa Company has not appealed, we are powerless to alter his judgment for its benefit, nor are we asked so to do. The motion to amend, filed on behalf of the heirs, is not well founded, and not sustained.

The judgment appealed from is affirmed, at the cost of the appellant.