150 So.2d 13 (1963)
243 La. 1056
Succession of Stokes SEALS, Deceased.
No. 46278.
Supreme Court of Louisiana.
February 18, 1963.
*14 Robinson & Atkins, Homer, for plaintiffs-applicants.
Jackson & Reynolds, Homer, Charles H. Morton, Jonesboro, for defendants-respondents.
HAMLIN, Justice.
The principal issue herein involved is the hostile possession of Stokes Seals, deceased, as to sixty acres of land located in Claiborne Parish.
Stokes Seals died testate on April 19, 1959; in his last will and testament he appointed his wife, Lillie Mae Seals, nee Watts, executrix of his estate and bequeathed to her an undivided one-half interest of all the property, real and personal, he died possessed of. After probate of the will and confirmation of the testamentary executrix, Lillie Mae Seals and Dorothy Mae Seals (adopted daughter of Stokes and Lillie Mae Seals, adopted August 19, 1919) petitioned the Second Judicial District Court in and for the Parish of Claiborne for a rule to show cause why, in substance, they should not be sent into possession, as owners, of all the property left by the said Stokes Seals at the time of his death, particularly sixty acres of immovable property described as:
"E½ of SE¼ of SE¼ of Section 20, and SW¼ of SW¼ of Section 21, all in Township 21 North, Range 6 West, containing 60 acres, more or less, with all and singular the improvements thereon, located in Claiborne Parish, Louisiana, being property acquired by Stokes Seals, Husband of Lillie Mae Seals, nee Watts, from A. D. Watts, by deed dated February 27, 1948, and recorded in Book `160', page 272, Conveyance Records, Claiborne Parish, Louisiana, and bearing file No. 174291 * * *"[1]
Plaintiffs based their claim to the sixty acre tract on the acquisitive prescription of ten and thirty years and on the liberative prescription of thirty years, alleging that Stokes Seals's possession was commenced in good faith, was open, public, peaceful, quiet, and adverse to all persons as owner. Alleging on information and belief that certain collateral relatives of the deceased purported to make invalid and illegal claims against the property, plaintiffs named as defendants, brothers, sisters, nieces and nephews of the deceased.
In answer to the rule, defendants denied that Stokes Seals owned the property in controversy and averred that they, "through their actions, have been in actual physical, peaceful and corporeal possession of this property by the payment of taxes, by living on this property, by farming it, by having accepted the Succession of their brother and Uncle, Henry Seals, deceased, and that they actually went into physical, peaceful and corporeal possession of this property hereinabove described, and asserted just as much actual physical possession of all this property as did Stokes Seals."
After a lengthy trial on the merits (testimony was taken on October 29, 1959, and on two other occasions), at which no court reporter was present, the matter was submitted on May 9, 1961.
On June 29, 1961, the trial court read and signed its judgment which ordered, adjudged, and decreed, "that the rule issued *15 on June 2, 1959, be, and the same is hereby, made absolute, and that the petitioners' pleas of ten and thirty-years acquisitive prescription be, and same are hereby, sustained, and that the petitioners' plea that the defendants have lost their rights to claim the Henry Seals Succession by thirty-years liberative prescription under Article 1030 of the LSA-Civil Code of 1870, be, and the same is hereby, sustained." The defendants, Olie Seals, Lay Seals, Lorrether Freeman, Ella Thompson, Vada Mardis, George Sellos Mardis, Roy Mardis, Aline Mardis, Thoesie Mardis, Herbert Mardis, Hazel Mardis, T. R. Mardis, Mattie Mardis, Ozeal Mardis, Sam Mardis, Willie T. Seals, Ernestine Liston, Ellwease Love, Fannie Neal, Samuel Seals, Timothy Seals, Annie Cleo Johnson, Fred Wafer, Lenard Wafer, Acie Wafer, Eula Duncan, Henry L. Amos and Arzella Ward, were declared to have no interest in the sixty acres above described; it was declared to have become the property of Stokes Seals, deceased, by virtue of ten and thirty years acquisitive prescription; any rights that Arzella Ward might have against the Succession of Stokes Seals were reserved unto her.
A motion for a new trial was denied on the ground that it presented nothing for the trial court's consideration;[2] an appeal was then taken to the Court of Appeal, Second Circuit; Lillie Mae Seals and Dorothy Mae Seals filed a motion to dismiss the appeal, alleging in part:
"There is no showing in the Record that any litigant requested the testimony be taken by any means at the trial or transcribed pursuant to the provisions of Article 601 of the Louisiana Code of Practice of 1870, the then existing law, or Article 2130 of the Code of Civil Procedure.
"There is no showing in the Record that any litigant caused a statement of fact to be drawn, signed and annexed to the Record pursuant to the provisions of Article 602 of the Louisiana Code of Practice of 1870 or Article 2131 of the Code of Civil Procedure.
"Although the Record contains the written opinion of the Trial Judge, the Trial Court made no statement of facts or narrative of facts pursuant to the request of litigants under the former provisions of Article 603 of the Louisiana Code of Practice of 1870 or Article 2131 of the Code of Civil Procedure.
"There is no transcript of the testimony in the record; and since the correctness of the judgment of the Trial Court depends upon the oral testimony which was not recorded, the appeal should be dismissed because there is nothing to review.
"Since the defect in the Record cannot be cured in the Court below, the appeal should be dismissed, and not remanded.
"Alternatively, should this Honorable Court deem the written opinion of the Trial Court to constitute a statement of facts, which we submit is not true, then the scope of this appeal should be limited to the facts set forth in the opinion of the Trial Court."[3]
*16 The Court of Appeal (142 So.2d 629) denied the motion to dismiss, stating:
"The testimony adduced in the case was not taken down in writing and realizing that such testimony was essential to protect the rights of the parties, the judge a quo made extensive notes during the trial and included the substance of this memoranda in his written reasons for judgment. The opinion contains substantially a complete summation of the testimony and is adequate for the purpose of resolving the several issues presented on this appeal. Counsel representing the appellees stated in an opposition to a motion for a new trial filed in the trial court, that: `* * * in the written opinion filed by the court, the court took occasion to go into detail in an exhaustive finding of facts, which it is respectfully submitted, is an accurate and true summary of the testimony and documents presented at the trial.'"
After considering the matter on the merits, the Court of Appeal rendered the following judgment:
"That petitioners' pleas of ten and thirty years acquisitive prescription be and the same are hereby overruled;
"That petitioners' plea of thirty years liberative prescription be sustained as to the defendants Olie Seals, Lay Seals, Ella Thompson, and the heirs of Dellie Mardis Brown, and overruled as to Loretter Freeman, the heirs of John Loy Seals, deceased, the heirs of Rebecca Wafer White, deceased, and the heirs of Garver Amos, deceased."
In a division of the sixty acres, Lillie Mae Seals was awarded a one-fifth interest, and Dorothy Mae Seals was awarded a one-fifth interest; the remainder was awarded to certain named collateral heirs of Stokes Seals in fixed proportions.
On rehearing, the Court of Appeal ordered that the cause be remanded for the purpose of receiving evidence as to the possession of Rebecca Wafer White; with the exception of the interest recognized as vested in the heirs of Rebecca Wafer White, the remainder of the original decree and judgment was reinstated and made final.
In the exercise of our supervisory jurisdiction, we granted Certiorari to review the judgment of the Court of Appeal. Art. VII, Sec. 11, LSA-Const. of 1921. Lillie Mae Seals and Dorothy Mae Seals, relators, *17 set forth the following Assignment of Errors:
"1. The Court of Appeal erred in refusing to dismiss appellants' appeal in the instant case when the decision of the trial Court was based purely on facts and the transcript of the testimony was not available to the appellate tribunal and nothing in the record showed what the facts were.
"2. The Court of Appeal erred in rejecting appellees' plea of thirty-year acquisitive prescription when it, in effect, substituted its findings of fact for that of the trial judge, when the appellate Court had no semblance of a transcript or any true statement of the facts before it.[4]
"3. The Court of Appeal erred in substituting its finding of fact for that of the trial judge on the question of which appellants accepted the Succession of Henry Seals when the appellate Court had before it no transcript of testimony or statement of facts."
There is no merit in relators' Assignment of Error No. 1; in view of the admission made by relators, supra, the Court of Appeal correctly stated the rule to be, "* * * where written reasons of the judge a quo reveal substantially all of the material testimony and the record is sufficiently complete to permit full consideration of the issues presented on appeal, the motion to dismiss will be denied. Holloway v. Willis, La.App., 134 So.2d 79 (2d Cir. 1961); Rosen v. Shingleur, La.App., 47 So.2d 141 (1st Cir. 1950); Pelican Signs, Inc. v. D'Aquin, La.App., 107 So.2d 722 (Orl.1958)."
We have read thoroughly the synopsis of the testimony set forth in the written opinion of the trial judge and find that the Court of Appeal properly found from the testimony that:
"The circumstances from which this litigation has evolved, chronologically stated, begin with the acquisition of a one-hundred acre tract of land by Henry Seals on January 12, 1904, at which time he was single. Henry Seals was later married to Leola Davis on February 5, 1907. Between the dates of January 6th and April 22nd, 1913, Henry Seals died intestate without children, but was survived by his mother and a number of brothers and sisters. By deed dated April 22, 1913, Stokes Seals acquired all the right, title and interest of every character whatsoever of the vendor, Leola Seals, surviving widow of Henry Seals, in and to the one-hundred acre tract of land for a consideration of One Hundred Ten ($110.00) Dollars, which sum was secured by the purchaser's vendor's lien mortgage note. Subsequent to purchasing this property on November 27, 1916, and November 13, 1917, Stokes Seals paid off this $110.00 mortgage note and another $220.00 mortgage note which had been given by Henry Seals and identified with an act of mortgage granted in favor of Tap Taylor.
"Following his acquisition of the property, Stokes Seals immediately moved upon the property and exercised certain acts of possession, ownership and management which included farming and the sale of timber. Also, during the years 1922, 1931, 1932, and 1935, he executed mineral leases upon the property. * * *
"During January and February, 1948, Stokes Seals transferred the property to A. D. Watts and the latter reconveyed the same to Stokes Seals. Watts testified that the transfer was *18 occasioned solely by reason of an advance of money to pay taxes. * * *"
On February 11, 1956, Stokes Seals executed a deed to M. Maritzky, H. S. Ford and C. W. Bibby, wherein he transferred to the three vendees forty acres out of the original one-hundred acres, supra, for a consideration of $1,400.00, or at the price of $35.00 per acre. (From the opinion of the trial judge.)
During July, 1957, Stokes Seals executed certain oil and gas leases; they were straight leases on Louisiana Producer's 88 form for sixty acres with a bonus of $600.00 provided; even though signed by Stokes Seals alone, certain collaterals received fractional interests. (From the opinion of the trial judge.)
In the Court of Appeal opinion it is stated:
"The record discloses certain quitclaim deeds * * * which were executed during June, 1957 by Loretter Freeman, Ella Thompson and Dellie Mardis Brown, now deceased. * *"
After setting forth a synopsis of testimony the trial judge concluded: "Upon a careful review of the evidence that was taken in this case, together with a review of the circumstances surrounding the institution of this suit, we are impressed particularly with the fact that, first of all, the defendants in this cause have assumed a negative attitude, bordering on anywhere from the simply indifferent to the actual disclaimer. As expressed by so many of them in their testimony, they didn't get anything out of the land in question, and they never put anything in it, or have anything to do with it. As happens in so many cases where the relatives who were born and reared in our State have scattered, and for years have had no connection with the property in which they at one time had an interest, they have maintained no actual personal interest in the property, even to the extent of investigating the status of the property, until some special interest in oil or other activities arouses a claim which has been dormant for many years. As contrasted with that attitude, we find that Stokes Seals took over possession of the property in question, made his home there, paid taxes throughout the years, when taxes had to be paid, regularly made application for homestead exemption when homeowners were allowed to get the waiver provided by the State; and during the years when his coheirs were indifferent about assuming any of the burdens of the property, actively managed the farm which was being operated on the land in question; built houses, fences and other improvements; and was the only one who did assume these burdens, except in some instances where some of the heirs desired to provide a place to reside and did some improving for their own comfort. He actually collected rent from some of the co-heirs; and, as one of his brothers expressed it, he had an understanding with Stokes Seals to the effect that, in exchange for the obligation that Stokes Seals took upon himself to take care of their mother, the brother would let Stokes have his interest. Certainly none of these defendants took a stand positive enough to formally ask in the courts that their rights be recognized. The filing of affidavits giving notice to the public that they claimed an interest is not such a positive stand as seriously challenges the title of one who has already been in peaceful possession for thirty years, and longer, as was the case here. The fact is that the attitude of all the defendants was so negative that they had to be ruled into court before any one of them made any effort to assert any rights.
"* * * in this particular case we are convinced that not only has the requisite possession been shown to support the ten-year prescription pleaded by the plaintiffs, but there is abundant evidence in this case to support the plea of thirty-year prescription. It is true that to support the thirty-year prescription, evidence of good faith is not necessary; and yet we find the circumstances in this case to surround the actions *19 of Stokes Seals with the best of good faith. What do we find when he first secured a deed to the property in question? His brother Henry had married in 1907, according to marriage license issued in Bowie County, Texas. This brother Henry, who had purchased the land in question, with 40 other acres, from another brother, died in 1913. Shortly before his death, Henry Seals, according to the evidence, went before one of the Deputy Clerks, and executed on January 6th of that year a mortgage on the 100 acres of land in favor of Tap Taylor, for the sum of $220.00. He signed the mortgage, representing himself to be the husband of Leola Davis. Between the 6th day of January, and April 22nd of that same year, Henry Seals died, since it was on April 22, 1913 that Leola Davis then went before the Clerk of Court, who at that time was E. H. Fortson, and executed a warranty deed in favor of Stokes Seals. Tap Taylor was one of the witnesses. The consideration for the sale of the land was a vendor's lien note, which was made payable to Leola Seals, which she in turn endorsed in blank; and, according to the evidence, both notes were the property of Tap Taylor, who evidently advanced the money to Leola Seals. Lillie Mae Seals testified that after Henry died, then Leola buried him and she made the deed to Stokes. According to the evidence, Stokes Seals paid the notes to Tap Taylor, for a total amount of $330.00, and Lillie Mae Seals testified that she advanced part of the amount from her own monies. It is evident then that Stokes Seals paid the debts of the Henry Seals succession, and we believe that the land was sold for that purpose. We do not find any of the heirs of Henry Seals offering to pay any part of the debts of his succession; * * *"
Speaking of the hostile possession of Stokes Seals, the trial judge said, "* * * however, when the situation has been changed and the occupancy becomes hostile, by reason of the fact that in 1913 this owner Stokes Seals, placed his deed of record, began to have the property assessed to himself, paid taxes, began to apply in his own name for homestead exemption, leasing the land, collecting rent from other heirs, he certainly gave notice of the fact that he had a title which was hostile to that of the other heirs. The fact is that under the law, he accepted the succession of Henry Seals by occupying the property and doing other acts which showed his acceptance. Among other things, he accepted the burdens of the succession. He took over the mortgage obligations which rested against the estate property; he assumed payment of the taxes, and from the time he took over from Leola Seals, he treated the property as his and his alone. On the other hand the defendants did nothing of a positive nature."
Applying the rule stated in Lee v. Jones, 224 La. 231, 69 So.2d 26 (1953), that the possession of a coheir, holding property in indivision with his brothers and sisters, is to be viewed as precarious, not as owner of the whole, but as inuring to the benefit of his co-owners, and in order for one coheir to prescribe against the other, his possession must be clearly hostile to the rights of the others, to the synopsis of facts by the trial judge, supra, the Court of Appeal concluded that the possession as exercised by Stokes Seals failed to disclose hostility to the rights of occupancy or use of the property by the other coheirs; it thought that Stokes Seals exhibited indulgence in permitting some of the heirs to live upon the property without objection. The Court concluded (stated supra) that the plea of thirty years acquisitive prescription, as provided for by Article 3499 of the LSA-Revised Civil Code, had not been made out and should be overruled; it also overruled the plea of thirty years liberative prescription, as stated supra, with respect to some of the defendants, finding that they evidenced an intention to tacitly accept the succession of Henry Seals in the quality of heirs, consistent with the provisions of LSA-C.C. Art. 987 et seq.
Under the circumstances of this case, we are bound by the synopsis and *20 narrative of the facts contained in the witten reasons of the trial judge; they reveal substantially all of the material testimony, and the record is sufficiently complete to permit full consideration of the issues presented. Our duty is to apply the law, keeping in mind that a strong presumption arises that the trial court had received competent and adequate evidence such as would serve as a basis for the judgment rendered. Ryan v. Barthelmy, La.App., 32 So.2d 467; Stout v. Henderson, 157 La. 169, 102 So. 193; Williams v. McGraw, La.App., 59 So.2d 398; Cohn Flour & Feed Co. v. Mitchell, 18 La.App. 534, 136 So. 782; Martin v. District Grand Lodge No. 21, La.App., 146 So. 793; W. T. Rawleigh Co. v. Freeland, La.App., 16 So.2d 489; Ansley v. Stuart, 123 La. 330, 48 So. 953.
Article 3499 of the LSA-C.C. provides that "The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith," and Article 3548 recites that "All actions for immovable property, or for an entire estate, as a succession, are prescribed by thirty years." The attributes of possession for thirty-year prescription are that "The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner." LSA-C.C. art. 3500. LSA-C.C. art. 1030 prescribes that "The faculty of accepting or renouncing a succession becomes barred by the lapse of time required for the longest prescription of the rights to immovables."
"* * * The possession must not only begin but must continue as owner, and must be adverse to the true owner. Davis v. Young, 36 La.Ann. 374; City of New Orleans v. Shakspeare, 39 La.Ann. 1033, 3 So. 346; Laurent v. Laurent, 146 La. 939, 84 So. 212; Dew v. Hammett, 150 La. 1094, 91 So. 523." Sanders De Hart v. Continental Land & Fur Co., 205 La. 569, 17 So.2d 827.
"Neither a title nor a possession in good faith is necessary for the acquiring of ownership by the prescription of 30 years. Civil Code Article 3499. But the possession on which this prescription is founded must be continuous and uninterrupted during all the time; and it must be public and unequivocal, and under the title of owner. Civil Code, Article 3500. Furthermore, as said in Civil Code, Article 3503: `How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, which is acquired without title, it extends only to that which has been actually possessed by the person pleading it.'" Henderson v. Henderson, La.App., 8 So.2d 133.
"We recognize also that under the jurisprudence a person claiming by possession alone and without title is required to show an adverse possession by enclosures, and that his claim will not extend beyond such enclosures. But, when this jurisprudence is considered with the articles of the Code announcing the law applicable to such cases, we do not think that a strict interpretation should be given to the word `enclosures.'" Hill v. Richey, 221 La. 402, 59 So.2d 434. See, Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648; Ranger Land Co., Inc. v. Story, La.App., 1 So.2d 410; Labarre v. Rateau, 210 La. 34, 26 So.2d 279.
"To acquire ownership of an immovable through possession of 30 years, it is not necessary to possess in good faith. It is sufficient that possession for this period be physical and as owner." Daw v. Laffitte, La.App., 23 So.2d 643. See, Vance v. Sentell, 178 La. 749, 152 So. 513; Gerrold v. Barnhart, 128 La. 1099, 55 So. 688.
Since relators have abandoned their plea of prescription of ten years (LSA-C.C. Art. 3478), it is incumbent upon us to *21 determine whether the above law and jurisprudence was properly applied to the facts of this case as found by the trial judge. His written reasons are replete with findings of fact to the effect that Stokes Seal's possession was that of owner and was hostile to that of defendants for a period of thirty years; even though good faith was not necessary, the trial judge found that Stokes Seals was in good faith. We conclude that the summary of the trial judge, quoted supra, is correct, and that he properly applied the law relating to acquisitive prescription to the facts.
The synopsis of the testimony states that some of the defendants considered the sixty acres herein involved as "heir property." If they did consider the property as such, they maintained an attitude of indifference (as found by the trial judge) and remained inactive during the period that the adverse or hostile possession of Stoke Seals was accruing. If Stokes Seals was indulgent in not collecting rent at times and in granting favors, his actions were purely beneficial; he manifested no intention of abandoning his adverse possession. These heirs never asserted any real claim to the sixty acres herein involved until they were ruled into court by the widow and adopted daughter of Stokes Seals. In fact, hostility and good faith on the part of Stokes Seals and the indifference of the defendants, as found by the trial judge, are so enmeshed as to preclude their being recognized as owners of the property.
We find that the plea of thirty years liberative prescription was well taken under the facts and circumstances of this case; the trial judge was correct in maintaining it against all defendants.
It was after 1943 (July, 1957), when prescription had accrued, that the oil lease granting certain bonuses to defendants was signed; it was in 1959 that defendants asserted their claims in response to the rule taken by Lillie Mae Seals and Dorothy Mae Seals. "The genius of our law does not favor the claims of those who have long slept on their rights and who, after years of inertia, conveying an assurance of acquiescence in a given state of things, suddenly wake up at the welcome vision of an unexpected advantage and invoke the aid of the courts for relief, under the effect of a newly discovered technical error in some ancient transaction or settlement." Lafitte, Dufilho & Co. v. Godchaux, 35 La. Ann. 1161, 1163. See, Sun Oil Co. v. Roger, 239 La. 379, 118 So.2d 446.
In Fried v. Bradley, 219 La. 59, 52 So.2d 247, this Court considered most apt its philosophy as announced in the case of Lafitte, Dufilho & Co. v. Godchaux, supra, and observed that it was safe to conclude that but for the discovery of oil and gas, which greatly enhanced the value of the property involved, the nullity of a deed of sale would never have been urged in the courts of justice of this State; and, that the belated action attacking the deed is offensive to good conscience and fair dealing and in violation of the very foundation upon which all laws are based, namely, justice, and the equitable maxim that one should not enrich himself at the expense of another.
For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside insofar as it overruled petitioners' plea of thirty years acquisitive prescription; it is reversed and set aside insofar as it overruled petitioners' plea of thirty years liberative prescription as to Loretter Freeman, the heirs of John Loy Seals, deceased, the heirs of Rebecca Wafer White, deceased, and the heirs of Garver Amos, deceased; it is reversed and set aside insofar as it awarded any part of the sixty acres herein involved to persons other than Lillie Mae Seals and Dorothy Mae Seals, said property being described as follows, to-wit:
"E½ of SE¼ of SE¼ of Section 20, and SW¼ of SW¼ of Section 21, Township 21 North, Range 6 West, containing 60 acres, more or less, with all and singular the improvements *22 thereon, located in Claiborne Parish, Louisiana."
The judgment on rehearing remanding the cause to the Second Judicial District Court in and for the Parish of Claiborne for the purpose of receiving evidence as to the possession of Rebecca Wafer White is reversed and set aside; the judgment on rehearing insofar as it reinstated its judgment on original hearing on those matters which we have overruled is reversed and set aside.
The judgment of the trial court insofar as it maintained petitioners' pleas of thirty years acquisitive prescription and thirty years liberative prescription is affirmed; it is affirmed insofar as it declared the above described sixty acre tract herein involved to have become the property of Stokes Seals; it is affirmed insofar as it reserved to Arzella Ward any rights that she might have against the Succession of Stokes Seals.
All costs are to be paid by respondents.
McCALEB, Justice (concurring).
Since relators have abandoned their plea of the ten-year acquisitive prescription, the principal question for decision herein is the validity of their plea of the 30-year prescription acquirendi causa under Article 3499 of the Civil Code.
Unlike the majority, I do not regard the 30-year liberative prescription provided for by Article 3548 of the Civil Code to be of any importance in the case as that codal article, declaring that all actions for immovable property are prescribed by 30 years, is merely an affirmance of Article 3499, by which the ownership of immovable property is acquired through 30 years adverse possession.[1] It is well settled by the cases cited in Footnote 1 that an owner of land does not lose his title by prescription because he remains out of possession for any length of time unless someone else has been in possession long enough to acquire title by prescription. The reason for this, as said in Thibodeaux v. Bonnabel Land Company, 171 La. 639, 131 So. 833, 837, "* * * is that an owner has as much right to remain out of possession as he has to remain in possession of his property; the only risk of remaining out of possession being that some one else might be in possession long enough to acquire title by prescription."
However, I agree that relators' plea of 30 years acquisitive prescription is well founded for, although Stokes Seals' possession of the tract would normally be regarded as precarious since he was a co-heir with his brothers and sisters of Henry Seals' succession (see Lee v. Jones, 224 La. 231, 69 So.2d 26 and cases there cited), he went into possession of the property not as a co-heir or co-owner but as sole owner thereof under a title translative of the property notwithstanding that the title under which he acquired was not a good prescriptive title, inasmuch as he, as found by the Court of Appeal (see 142 So.2d at page 633), was in legal bad faith.
A distinction should be recognized, I think, between a case like this, in which a co-owner pleading 30-year acquisitive prescription takes initial possession under a deed translative of the property, albeit invalid, and a case in which a co-owner enters possession of the whole without a paper title and without clearly indicating to the other co-owners that he intends his possession to be hostile to their interests. In the first instance, it strikes me that the very fact that he acquires a title for valuable consideration, as in this case, is sufficient to rebut any legal presumption that he is possessing for his co-heirs or co-owners, which normally obtains in cases in which the co-owner simply takes possession of the *23 land. Accordingly, in this case, the fact that Stokes Seals entered the property in 1913 under a title and possessed as owner for over 30 years is sufficient, in my opinion, to warrant maintenance of the plea of 30-year acquisitive prescription and this despite the fact, as indicated by the evidence, that he may have permitted some of his co-heirs to live thereon by sufferance.
For these reasons, I concur in the decree.
NOTES
[1] A value of $3,000.00 was placed on the property by Lillie Mae Seals and Dorothy Mae Seals.
[2] In denying the motion for a new trial the trial court stated that, "Stokes Seals had taken charge of the land in 1913, had assumed the burdens which the law imposed upon the lands in question and in all respects acted as a good faith possessor with nothing except ownership in mind. The public policy of our State does not contemplate that the title to lands in Louisiana shall continue in question. If one has a just right to real estate in Louisiana, he should assert that right within a reasonable time; and, while the adage that `ignorance of the law excuses no one' is still not out of date, we might add that `ignorance of one's rights in our day is no longer considered a virtue'; particularly when that ignorance is caused by indifference."
[3] Art. 601, La.Code of Practice: "Either party may require the clerk to take down the testimony in writing, which shall serve as a statement of facts, if the parties should not agree to one."

Art. 602, La.Code of Practice: "When the deposition of witnesses have not been taken in writing in the inferior court, the party intending to appeal, or his advocate, must require the adverse party or his advocate, to draw, jointly with him, a statement of the facts proved in the cause, and this statement thus drawn and signed, either by the parties or their advocates, shall be annexed to the records, and a transcript of the same transmitted to the Supreme Court."
Art. 603, La.Code of Practice: "If the adverse party, when required to do so, refuse to join in making out the statement of facts, or if the parties can not agree as to the manner of drawing the same, the court, at the request of either, shall make such statement according to their recollection of the facts, or from the notes they have taken of the evidence."
Art. 2130 LSA-Code of Civil Procedure: "A party may require the clerk to cause the testimony to be taken down in writing and this transcript shall serve as the statement of facts of the case. The parties may agree to a narrative of the facts in accordance with the provisions of Article 2131."
Art. 2131, LSA-Code of Civil Procedure: "If the testimony of the witnesses has not been taken down in writing the appellant must request the other parties to join with him in a written and signed narrative of the facts, and in cases of disagreement as to this narrative or of refusal to join in it, at any time prior to the lodging of the record in the appellate court, the judge shall make a written narrative of the facts, which shall be conclusive."
[4] Relators have abandoned their plea of the prescription of ten years; this was stated in argument before this Court.
[1] See Generes v. Bowie Lumber Co., 143 La. 811, 79 So. 413; Harang v. Golden Ranch Drainage Co., 143 La. 982, 79 So. 768; Thibodeaux v. Bonnebel Land Company, 171 La. 639, 131 So. 833; Buckley v. Catlett, 203 La. 54, 13 So.2d 384 and Lee v. Jones, 224 La. 231, 69 So.2d 26.