152 So. 513

**VANCE et al. v. SENTELL.**

No. 32219.

July 7, 1933.

On Rehearing Jan. 2, 1934.

Affirmed.

L. Percy Garrot, of Shreveport, for appellant.

Chandler Furman, of Shreveport, for appellees.

ODOM, Justice.

Plaintiffs allege that they own an undivided one-half interest in 240 acres of land in Bossier parish in common with the defendant, John M. Sentell. It is alleged that defendant, Sentell, is now and has for many years been in possession of said property and has obtained certain revenues from the whole of it and has made no accounting to them therefor. They pray for a partition of the lands and for an accounting.

Defendant excepted to the petition on the ground that it set out no cause of action. He also filed pleas of prescription of ten and thirty years acquirendi causa to the demand for partition, setting up that he had been in open, peaceable, continuous, and notorious possession of the land since 1893, believing all the while that he was the owner of the entire interest. He also pleaded prescription of one, three, and five years liberandi causa as a bar to the action for an accounting.

There was judgment recognizing plaintiffs and defendant as owners in common, one-half to each, of the property and ordering the same partitioned in kind. There was also judgment against defendant for $1,050, representing amounts which he had admittedly received for mineral leases and from the sale of timber from the land. It was further ordered that defendant file an account showing what further revenues, if any, he had received from the property.

From this judgment, the defendant appealed.

(1) The conveyance records of Bossier parish show that the land in controversy was originally owned by W. C. Vance, Sr., and N. W. Sentell, Sr., each owning an undivided one-half interest therein. Santell died prior to 1893, leaving three children as his heirs, one of whom is the present defendant. The Sentell heirs partitioned in kind the property left them by their deceased father, among themselves, and the undivided one-half interest in the lands here involved was set apart to defendant. So that defendant,

on June 8, 1893, owned the land in common with W. C. Vance, Sr.

Vance died later and his one-half interest is now claimed by these plaintiffs by inheritance.

Defendant does not claim to have acquired the Vance interest in the land by any act of transfer, but says that shortly after he acquired the one-half interest through his father's succession, Mr. Vance, who was his maternal uncle, told him that he considered the land practically worthless and cared nothing about it, and that if he, Sentell, would pay the taxes on it he might have it. Sentell says that he accepted the proposition, immediately went into possession and from that date, sometime in 1893 or 1894, down to the present time he has been in continuous, uninterrupted, public, and unequivocal possession of the entire interest in the land under the title of owner (C. C. art. 3500), and that he has paid all taxes due on the land during all those years. He pleads thirty years' prescription.

At the time Mr. Sentell says that Vance, Sr., turned over to him the one-half interest in the land, about 50 or 60 acres of the 240-acre tract were fenced and in cultivation. There was a house upon it, a well, and possibly some outbuildings. A colored man named Martin Williams lived in the house and cultivated the land for some five or six years after Sentell took charge, and Sentell received the rents. The house burned and the property was abandoned for agricultural purposes. The fences and other improvements either burned or fell into decay, so that now there remains no vestige of any works erected on the property by Sentell or any one else

(C. C. art. 3502), nor are there now, nor have there been for many years, any external and public signs "announcing the possessor's intention to preserve the possession of the thing." (C. C. art. 3501.)

The date on which the house on the property burned is not made certain by the testimony, but we understand it was prior to the year 1900. At any rate, the exact location of the house and the field cannot now be determined. Even the fence rows cannot be located, although there are signs of an old fence on the line between this land and the adjoining properties. But the location of the interior fences cannot be determined. There is an old well on the land about 75 feet from the line which is now being used by tenants on adjoining property, but whether this well was used by the colored man who formerly cultivated it is not known. It cannot now be determined on what part of the 240-acre tract the clearing and house were located and no evidence whatever that the entire tract was ever inclosed. Presumably, the 50 or 60 acres was inclosed, but beyond this presumption, there is no indication that any of it was ever inclosed.

From the time the house on the property burned, which seems to have been about 1900, the entire tract has been vacant. If Mr. Sentell or any one for him ever went upon the land after that date until the timber was sold and removed in 1924, the record fails to disclose the fact. Mr. Sentell leased the land, or portions of it, for minerals in 1920, but there is no evidence that the lessee developed it.

Mr. Sentell alleged that he paid taxes on the land during all the years from 1893 down

to the present time. As a witness, he was not quite sure of that. His attention was called to the fact that according to the records in the assessor's office, he was assessed for only a one-half interest in the land from 1898 to 1903, and that from 1903 to 1913, none of the land was assessed to him under correct description. From 1913 to 1924, the entire interest in the land was assessed to him, but from 1924 to date, the tract was assessed to J. M. Sentell and the Vance estate. He said he paid all the taxes assessed to him and did not examine the records to see the description of the land.

■■■ But conceding that he paid all the taxes on the entire interest in the land for all those years, that would not give him title. He claims title through thirty years prescription under article 3499 of the Civil Code. To acquire title by prescription under this article, one must hold corporeal possession under the title of owner for thirty years. Such possession need not be in good faith, but it must be open, continuous, public, and uninterrupted during all that time. The payment of taxes is not possession. It is at most only evidence of intent to possess.

■ "The ownership of immovables is prescribed for by thirty years." C. C. art. 3499. But in order to maintain the plea of prescription of thirty years acquirendi causa, the burden is upon him who makes the plea to show that he had corporeal or physical possession in the beginning and that such possession was continued during the entire time, or that such possession was preserved for the entire period by external and public signs announcing such possession and the intention to possess. C. C. art. 3500 et seq.; Ramos Lbr. & Mfg.

Co. v. Sanders et al., 117 La. 615, 42 So. 158; Loeb v. Fetzer, 155 La. 659, 99 So. 520; Croom et al. v. Noel et al., 143 La. 189, 78 So. 442.

Defendant has failed to establish title by prescription of thirty years.

■ (2) The remaining question is whether he must account to plaintiffs for one-half of the revenues received from the property.

It is alleged that defendant acted all along in perfect good faith. He says he believed that he owned the entire interest in the land and we have no doubt that he did so believe. For this reason, his counsel says he owes rents and revenues only from the date of judicial demand. He cites article 3453 of the Civil Code, which provides that the rights which are peculiar to the possessor in good faith are:

"1. The right which such a possessor has to gather for his benefit the fruits of the thing, until it is claimed by the owner, without being bound to account for them, except from the time of the claim for restitution."

He also cites numerous decisions to the effect that a possessor in good faith owes rents and revenues only from the date of judicial demand.

But that article of the Code and the decisions cited have no application to this case. Plaintiffs and defendant own this property in common and it was always subject to partition and it has been held repeatedly that where one of the co-owners of real estate has possession of the whole and enjoys all the revenues of the common property, he is not protected by the statute of limitations from accounting to his co-owners for rents and profits.

In the case of Davis v. Ruddock Orleans Cypress Co., 132 La. 985, 62 So. 114, and again in Satcher v. Radesich, 153 La. 468, 96 So. 35, 39, this court approved as a sound principle the following proposition of law:

"The relations between a tenant in common, in the possession and sole enjoyment of the common property, and his cotenants, has been regarded as that of a principal and agent; hence such tenant is not protected by the statute of limitations from accounting with his cotenants for rents and profits. The statute does not begin to run in his favor until the relationship existing between the parties terminates, as upon partition, ouster, or demand and refusal to account. A. & E. Enc. of Law (2d Ed.) vol. 17, p. 696; 38 Cyc. pp. 36, 37, 100."

These cases hold in effect that the demand by one co-owner for an accounting by another who has enjoyed the whole property, for fruits and revenues received, though barred by prescription as an independent demand, continues as an incident to the demand for partition so long as the thing remains in common and community is acknowledged or proved. The same principle was announced in Sibley et al. v. Pierson et al., 125 La. 478, 51 So. 502.

In a much older case, that of Chapman v. Woodward, 16 La. Ann. 167, it was held that in actions of partition involving a settlement of claims or accounts, no prescription is applicable except that which is a bar to the partition itself. And in King's Widow & Heirs v. Wartelle, 14 La. Ann. 740, it was held, to quote the third paragraph of the syllabus, that: "When the action is one for partition of property, and the liquidation of partnership affairs, the settlement of the accounts being an incident to the partition, the prescription of thirty years only is applicable to the case."

In the case at bar, the main demand was for a partition of the property. As an incident to that demand, plaintiffs prayed for an accounting. It is not denied that defendant received various sums within ten or twelve years previous to the date on which the suit was filed for mineral leases and from the sale of timber. His plea is that the action for these sums and all others received as revenues from the property is barred by prescription. The plea of prescription was overruled and properly so.

Finding no error in the judgment appealed from, we affirm it with all costs.

### On Rehearing.

ST. PAUL, Justice.

We have re-examined this case and find no reason to disturb our former opinion and decree.

(1) It is immaterial that defendant was in moral good faith in believing himself entitled to the land under the oral abandonment thereof to him by his uncle, the ancestor of these plaintiffs. Articles 3451, 3453, R. C. C. (formerly 3414, 3416) must be read in connection with articles 503, 502, R. C. C. (formerly 495, 494). There is no difference between a "possessor in good faith" and a "bona fide" possessor. And there can be no bona fide possessor except one who possesses under a title translative of property and not defective on its face. Gibson v. Hutchins,

12 La. Ann. 545, 68 Am. Dec. 772; Brashear v. Dwight, 10 La. Ann. 645.

(2) It is also immaterial that the purchaser from the defendant of the oil rights on the premises made no use of his acquisition. The fact remains that defendant sold the oil rights, of which he owned only one-half, the other half belonging to plaintiffs, and that defendant alone received the entire price. Of course, he owes plaintiffs their share of the price. Fellows & Co. v. Frelson & Co., 6 La. Ann. 477; Devot & Co. v. Marx, 19 La. Ann. 491; Normand v. Edwards, 23 La. Ann. 142; Gaty, McCune & Co. v. Babers, 32 La. Ann. 1091.

(3) As to the prescription applicable to the claim for the price of timber cut and sold by the defendant, the case of Davis v. Ruddock Orleans Cypress Co., 132 La. 985, 62 So. 114, is not applicable; but this case falls under the rule in Satcher v. Radesich, 153 La. 470, 96 So. 35, wherein it is shown that the decision in the Ruddock Orleans Cypress Case is not in conflict with the long line of jurisprudence relied on in the Radesich Case and in this, but was based on the circumstances of that case, which were absent in the Radesich Case and are also absent here.

For the reasons assigned, it is now ordered that our former decree be reinstated and be made the final judgment of the court.

O'NIELL, Chief Justice.

I respectfully dissent from the decree rendered in this case in so far as it requires the defendant to pay the plaintiffs' claim of $1,050 for revenues derived from the land while the defendant possessed it in good faith. It is conceded in the original opinion rendered in this case that the defendant possessed the land in good faith, believing that he owned the whole tract, and not as the owner of half of it, or for the benefit of his co-owners.

The decisions cited in the prevailing opinion in this case are authority for the proposition merely that an owner of a part interest in a tract of land, who possesses the land for the benefit of all of the co-owners and not under the claim of being the sole owner, must account to the co-owner or co-owners for his or their share of the revenues, and cannot plead prescription in bar of the demand, when sued for a partition of the property. But the defendant in a petitory action, who owns only a part interest in the land, but possesses the whole of it in good faith, believing that he is the sole owner, does not have to account for the revenues which he has derived from the land before judicial demand was made upon him by the other co-owner or co-owners. Rev. Civ. Code, art. 3453. It is illogical to say that one who owns an interest in land which he possesses as sole owner, in good faith, is worse off, with regard to accounting for the revenues which he has derived from the land, than he would be if he had no interest at all in the property, but possessed it under the belief that he owned it. It is illogical also to say that a plaintiff in a petitory action who owns only a part interest in the land is better off than one who owns it all, with regard to compelling the defendant to account for the revenues, on the false theory that the owner of only a part interest in the land may destroy the effect of the defendant's good faith, and defeat the laws of prescription, by the simple expedient of asking for a partition, in his petitory action. That cannot be true.

Standing or growing timber does not come within the category of "fruits," in the meaning of article 3453 of the Civil Code. Hence a possessor of another's land, who fells the forest timber, must account to the owner for the value of the timber, notwithstanding the possessor who felled the timber was in good faith, believing that he owned the land. Harang v. Bowie Lumber Co., 145 La. 96, 81 So. 769.

Davis v. Ruddock Orleans Cypress Co., 132 La. 985, 62 So. 114, cited in both of the prevailing opinions in this case, is authority for the proposition only that, where a part owner of a tract of land possesses the land as owner, in good faith, adversely to the other co-owners, and believing that he is the sole owner, he is protected by the prescription of one year against a suit by the other co-owners for their share of the value of timber which he felled and removed from the land. That decision ought to avail the defendant in this case.