This is a petitory action in which the plaintiff seeks to have its alleged ownership of Lot No. 3 of the Resubdivision of Canaan Land Subdivision, City of Shreveport, as per map recorded in Conveyance Record Book 150, page 172, Caddo Parish, with buildings and improvements thereon, recognized and possession thereof, now held by the defendants, Mack Battle and Willie Williams, delivered to it.
Willie Williams, as tenant of Battle, occupied a small dwelling house on the lot and after disclosure of these facts by answer, he passed out of the case.
Mack Battle, in his original answer, denied plaintiff's ownership of the property and alleged that he took possession of the lot peaceably and in good faith on or about May 5, 1922, under a contract and sale by Dixie Realty Company to him of that date and that he has complied with all of the obligations assumed by him in said contract. He pleaded the prescription of ten years acquiendi causa. Alternatively, and in reconvention, should this plea be overruled and plaintiff's alleged ownership recognized, he avers that he has constructed two residences upon the lot, the value of materials employed to do so being $500 and the cost of workmanship being $153; that the value of the soil of the lot has been enhanced to the extent of said amounts. He prayed in consonance with his answer and reconventional demand. By a supplemental answer, defendant increased his demand in reconvention to $993.68.
By amended petition, plaintiff charges that defendant's possession is and has been in bad faith, without color of title; and this being true, he is due to account to plaintiff for rents, revenues and fruits derived from said property during his possession and occupancy thereof subsequent to December 4, 1931, date of plaintiff's acquisition. The value of such rents, etc., is alleged to be $1,562. Judgment for this amount is prayed for. Defendant denied the allegations of the amended petition.
Plaintiff was recognized as owner of the lot. Defendant was adjudged owner of the improvements and, in effect, was held to be a possessor in bad faith. The improvements were valued by the court at $250. Plaintiff was granted thirty days in which to elect whether it will keep the improvements and pay defendant the found value thereof or require their removal. Should plaintiff elect to have the improvements removed, defendant was allowed thirty days in which to do so after notice of plaintiff's election. Each side was cast for one-half of the court costs. The judgment is silent as regards the demand for rents and revenues, which means rejection of this demand.
After unsuccessful urging of a motion for new trial and/or rehearing, plaintiff perfected appeal to this court. Defendant, answering the appeal, assigns errors in the judgment and prays for amendment thereof.
In this court the issues have, to a material extent, been reduced from what they were in the lower court. The plea of prescription is expressly abandoned by the appellee. He has also abandoned his claim to ownership of the lot but persists in his asserted ownership of the improvements. He reaffirms his contention that he is a possessor bona fide and that plaintiff should be required to keep the improvements and pay him $653 therefor before possession is delivered.
Plaintiff's counsel in brief insists primarily that it acquired ownership of the improvements when it acquired the lot; and, alternatively, insists that defendant is a possessor in bad faith and asks for judgment for rents and revenues only to the extent of the value of these improvements; the desire being that the one should equally offset the other.
The lot in question was sold by James M. Woodward to J.R. Hollingsworth and J. Singleton Swann on July 6, 1921. Hollingsworth conveyed his one-half interest to Swann on January 17, 1922 and Swann reconveyed to Hollingsworth on July 10, 1925. On February 20, 1926 Hollingsworth sold to Swann his interest in the lot and in *Page 155 
that of many others in the City of Shreveport. While the property was owned jointly by Swann and Hollingsworth they operated as a partnership, under the style of Dixie Realty Company, but the title of their joint holdings was never vested in the partnership. On May 5, 1922, the Dixie Realty Company by J.R. Hollingsworth, executed a contract to defendant, wherein the partnership agreed to sell to him the lot in question for $500, $10 of which was paid in cash and the balance was payable in monthly installments with eight per cent interest from the date of the contract. It was stipulated that when $450 had been paid on the price of the promised sale that defendant would be entitled to a deed. The contract was under private signature, not witnessed nor signed by defendant nor was it recorded prior to the filing of this suit.
In the latter part of the year 1931, plaintiff corporation was organized. The primary, if not the sole, purpose of its creation was to acquire and the more conveniently to handle and dispose of the vast quantity of improved and unimproved property owned by Swann in the City of Shreveport. Of its 900 shares of capital stock, 892 were issued to him in exchange for the property conveyed.
To effectuate the incorporation, the remaining 8 shares were issued to other persons, including Mrs. Swann and another member of the family. Mr. Swann became president and Mrs. Swann secretary-treasurer. The lot in dispute was included in the transfer.
The first question to decide is whether the sale by Swann to plaintiff passed title to the improvements, there being nothing of record to apprise the public of the diversity of ownership. The general laws of registry are invoked by plaintiff, particularly Art. 2266 of the Civil Code. It reads: "All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording." Art. 2266, Civil Code.
Defendant firstly relies upon Art. 508 of the Civil Code, which governs the rights and obligations of third persons who erect buildings, etc., upon land of another, whether in good or bad faith, and argues that the general laws of registry do not prevail over the provisions of this article. To further support his position, defendant employs Art. 2452 of the Civil Code, which is as follows: "The sale of a thing belonging to another person is null; it may give rise to damages, when the buyer knew not that the thing belonged to another person." Art. 2452, Civil Code.
But, alternatively, defendant contends forcefully that even though this position be held as a general rule to be erroneous, his ownership of the improvements is unaffected thereby since plaintiff corporation is purely and simply the alter ego of Swann, a "reincarnation of himself and business into a new and different entity". In effect, it is said, the transfer by him to the corporation in a sense is a transfer to himself and, therefore, worked no change in the ownership of the improvements, nor of the status of things emanating from the promise of sale. Swann evidently shared this interpretation of the matter. Of course, it could not be successfully contended that had not the transfer intervened, Swann could have recovered the improvements.
We are favorably impressed with defendant's alternative position. The facts abundantly support its correctness. This obviates a decision on the primary contention advanced by him.
Swann admits he had knowledge of and was bound by the promise of sale given defendant by Hollingsworth in the name of the Dixie Realty Company. He admits receiving payments from defendant on the contract after Hollingsworth sold out to him, and prior thereto, most of which were collected by his agents. He also admits that he personally interviewed defendant in August, 1936, five years after he transferred the lot to plaintiff, and insisted that he make a payment, and that defendant then paid him $20 "on the account". At that time he told defendant that upon payment of $400 additional, a deed would be made to him. He did not at that time, nor for nearly four years thereafter, so far as the record discloses, assert for himself or his company ownership of these improvements. In all respects, individually and as president of the company, he recognized defendant's possession of the lot under the contract and his ownership of the improvements, and urged him to continue payments to the end that he might ultimately become the owner of the lot. No demand for rent for the use of the property was made, although *Page 156 
over three years elapsed between the time the last payment was made and the filing of suit. The pass book given defendant at the time the promise of sale was handed him, in which entry of payments were made, continued to serve this purpose after the sale.
Defendant testified that he believed himself to be the owner of the lot and based that belief upon the written instrument delivered to him by Hollingsworth. He is an illiterate colored man and may have easily misunderstood the true import and meaning of the instrument. In no sense of the term can it be considered sufficient to transfer title. It did not purport to do so. Cursory reading of it reveals total lack of verbiage adequate to convey title, but on the contrary, it plainly states that upon the payment of $450 of the fixed price and interest, a deed would be executed.
A possessor in good faith is defined to be: "The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another." Art. 3451, Civil Code.
The possessor in bad faith is defined to be: "* * * he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective." Art. 3452, Civil Code.
Defendant may have been in moral good faith in believing himself "master" of the lot, but his possession thereof was in legal bad faith. He assumed the quality of "master" when he, in legal contemplation, well knew he had no title to the property and that the instrument he relied upon was "vicious or defective" as a muniment of title. A misconception of law, be it ever so honest, or of the legal effect of an instrument under which possession is held, is not sufficient to characterize such possession as being bona fide.
It is said in Ruth v. Buwe et al., 185 La. 204, 168 So. 776, 778, that: "Defendants and their parents may have been serious in their belief that they were the owners of the property, but a misconception of the law, no matter how honest, cannot have the effect of making them possessors in good faith, because they had no title valid in form or an act sufficient in terms to transfer the property as required by the articles of the Civil Code above quoted and the decisions interpreting them." Vance et al. v. Sentell, 178 La. 749-758, 152 So. 513.
This latter case cites with approval Brashear v. Dwight, 10 La.Ann. 645, in which it was held: "Where the nullity, which vitiates the title to the purchaser, is apparent, from an inspection of the title itself, the purchaser will not be considered as in good faith, and be relieved from accounting for the rents and profits while he was in possession."
In Heirs of Dohan v. Robert Murdock, 41 La.Ann. 494-497, 6 So. 131, 132, it was held: "The essential conditions of the good faith which our law contemplates in the purchaser of property under a defective title are that he had just reason to believe that he would possess the property as master, and that he was ignorant of the defects of the title which he was acquiring."
A possessor in bad faith, as we find defendant to be, owes rents on or an amount equal to the rental value of the thing possessed by him. However, no effort was made in this case to prove the rental value of the lot in question. It was shown for what amounts the houses rented but as these belonged to the defendant, of course, he owes plaintiff nothing therefor. Kibbe v. Campbell, 34 La.Ann. 1163.
The two houses were originally constructed largely of inferior material. They are now nearly twenty years old and have depreciated in value to a considerable extent. It is impossible to prove the exact cost of the material when used or the price of the workmanship, although some effort was made to do so. Estimates of the present value of the buildings vary. The lower court fixed such value at $250. We believe this to be adequate and equitable.
Defendant argues that if it be held that he is a possessor in bad faith, it is now too late for plaintiff to elect whether he will keep the improvements and pay for them or require their removal. We do not agree with this position. Of the many cases dealing with the question, none have so held. In Snider v. Smith, Man. Unrep. Cas. 262, it is said that the plaintiff "ought" to make the election before final judgment, but it is not said that the failure to do so forfeits the right. We know of no good reason for such a result. *Page 157 
Appellee also contends that plaintiff did not make out his case in that title was not established to a date prior to incipiency of defendant's possession. This is erroneous as the title deeds introduced in evidence antedate the promise of sale. This was sufficient as against defendant who has no title at all. Hutton v. Adkins et al., La.App., 186 So. 908, and cases cited therein.
Each side complains because of the assessment of one-half of the costs to them respectively. In view of the nature of the case we are of the opinion that a division of the costs in this manner is equitable. Act No. 229 of 1910.
The judgment appealed from is affirmed.