ELLIS, Judge.
This case was instituted by Eric Chaney, Alder L. Chaney, Joseph E. Chaney and *472 Noel Francis Chaney, brothers, against their brother-in-law, Gilbert Whitney, in an effort to collect rent for the occupancy of the Chaney family home. The period covered by plaintiffs’ claim are the months succeeding the death of their widowed mother, Mrs. Fannie LeBlanc Chaney, on February 14, 1957, and plaintiffs seek to collect their proportionate share of rent at a rate of $125 per month. Their share is an undivided four-fourteenths interest in the property.
An exception of no cause or right of action was overruled by the District Court Judge and after trial on the merits, judgment was rendered for the plaintiffs in the amount of $146.82, with written reasons assigned.
The defendant has perfected an appeal from this judgment. The pertinent facts revealed by the record are as follows:
The plaintiffs herein and their three sisters are the sole living heirs of their deceased father, Anthony A. Chaney, who died in 1942. These heirs inherited an undivided one-seventh interest each in and to their father’s one-half of the community property subject to their mother’s usufruct. Their mother continued to live in the home until she died on February 14, 1957. Ethel Chaney married Gilbert E. Whitney and they lived together with plaintiffs’ mother for several years prior to her death. Gilbert E. Whitney and Ethel C. Whitney have continued to reside in the Chaney family home since February 14, 1957. No demand' was made nor was an agreement ever entered into by Mrs. Fannie L. Chaney and' her son-in-law, Gilbert E. Whitney, while she was alive. After her death no demand was made on defendant or defendant’s wife by plaintiffs until shortly prior to the institution of the suit. Several realtors testified concerning the rental and commercial value of the residence in question.
The trial court’s judgment was based substantially upon the judgment in Gilmore v. Gilmore, 137 La. 162, 68 So. 395, 397. In the reasons for judgment the following ea cerpt from the Gilmore case is quoted:
“In preparing the project of partition, plaintiffs herein appear to have realized that the person to be charged was the master of the community, and caused the whole charge to be made against him, to which he makes no complaint, save as to the rate, insofar as the amount due to the heirs of J. Y. Gilmore are concerned. The executor was in error in addressing himself to. Mrs. Harnett upon the subject of the rent, and in assuming that she was in any way bound for it * * * ”.
Counsel for defendant urges that the findings in the Gilmore case are not controlling herein, because a rental agreement was-in effect in that case.
As stated above, there was never an. agreement concerning the rent in the case-at bar. We feel this distinction is sound.
In the Gilmore case the son-in-law paid $25 per month rent on a residence belonging to the community which had existed between his widowed mother-in-law and his deceased father-in-law. The executor of the Gilmore estate charged the usual $25". rental for three months and then made demand to increase the rental to $100. There-was controversy over this action and the-court reduced the rental to $65 per month, for the period in question.
The above findings are apparently an application of the general contract article of the LSA-Civil Code which we quote as follows :
Article 11. “Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals.
“But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public, good.”
*473 As above stated, there was never an agreement for rental between Gilbert Whitney and his mother-in-law, nor did Whitney agree to rent the family home after the death of his mother-in-law. If there had been such an agreement, it is logical that the defendant would have bound himself and the community of acquets and gains existing between himself and his wife for the payment of the rent. This is not the case presented herein.
The trial judge cites LSA-Civil Code, Article 120 and Veazey v. Rogers, La.App., 6 So.2d 170, as further authority for his judgment. In the Veazey case there was also a contract for rent at issue. Article 120 of the LSA-Civil Code must be read with Article 119 which states:
“Mutual duties. The husband and wife owe to each other mutually, fidelity, support and assistance.”
In this case, we find that the defendant never contracted for rent and that his occupancy of the Chaney family home was made solely in his status as the husband of one of the Chaney heirs. The rules applicable to the occupancy do not apply to the co-owners since the defendant never bound himself in any way for the payment of rent and was merely residing with his wife in a residence which she owned in in-división with the plaintiffs.
The question presented in the case at bar has been carefully analyzed and solved in the case of Juneau v. Laborde, 228 La. 410, 82 So.2d 693, 695, and we quote a pertinent portion of that judgment:
“ * * * In this suit, plaintiffs have included a demand for rent based on a charge against defendant for his occupancy of the premises, i. e., a month rental of 1% of the value of the improvements placed on the property by defendant in 1939.
“This claim cannot be sanctioned, for defendant was a co-owner of the property and was entitled, as such, to occupy it without becoming liable to plaintiffs for rent. Becnel v. Becnel, 23 La. Ann. 150; Balfour’s Heirs v. Balfour, 33 La.Ann. 297; Toler v. Bunch, 34 La. Ann. 997 and Perez v. Guitard, 14 Orleans App. 191. In determining the amount due and recoverable by a co-owner out of possession from his co-owner in possession, a clear distinction should be drawn between the personal occupancy, use and enjoyment of property by the possessor and the rents and revenues derived by him therefrom, either from a lease or by his own industry or exploitation. As to the latter, he must account to his co-owner for all rents and revenues he has received because, in obtaining these fruits, he acts not only for himself but also as the agent of his co-owner for the latter’s just proportion. Davis v. Ruddock Orleans Cypress Co., 132 La. 985, 62 So. 114; Satcher v. Radesich, 153 La. 468, 96 So. 35 and Vance v. Sentell, 178 La. 749, 152 So. 513.
“On the other hand, the co-owner who takes possession of the common property does not have to account to his coproprietor, because the right of occupancy is vested in him by virtue of his ownership. Article 494, Civil Code. This right of co-owners to possession of the property being equal and coextensive, neither become indebted to the other for his personal occupancy and enjoyment, save, probably, that a co-owner, who has been deprived of the right of possession by reason of his co-owner’s exclusive occupancy, may claim damages from the date upon which he has demanded occupancy and has been refused by the possessor.1 But, even in these instances, the co-owner in possession cannot be enjoined from occupying the property or cultivating it. The remedy of the co-owner out of possession is, as stated in Moreira v. Schwan, 113 La. 643, 37 So. 542, 543, ‘ * * * by suit for a partition and settlement of accounts, or for a division of profits, if any.’ 2
*474 “1 In the case at bar, plaintiffs have never sought occupancy of any part of the premises nor has the right of occupancy been denied by defendant.
“ 2 See also Stinson v. Marston, 185 La. 365, 169 So. 436, 439, where it was stated: ‘The courts of this state have always recognized the'right of a co-owner to use the property held in common for the purposes for which it is destined, such as the cultivation of farm lands of the sort involved in this controversy. Becnel v. Becnel, 23 La. Ann. 150; Toler v. Bunch, 34 La.App. 997; Moreira v. Schwan, 113 La, 643, 37 So. 542.’ ”
The district court took full cognizance and recognition of the well settled jurisprudence as stated in Juneau v. Laborde, supra, and cases therein cited, however, in deciding the case in favor of the plaintiff he distinguished the Juneau case and those cited therein, and in doing so and in arriving at a decision on that question he stated:
“Neither in the Juneau case nor in any of the cases there cited was the defendant a married woman residing with her husband, nor was the defendant in any of these cases a husband residing with his wife a co-owner with the plaintiffs, as is the situation here.
“In Gilmore v. Gilmore, 137 La. 162, 68 So. 395, the Supreme Court had occasion to pass on the question as to whether a married woman residing with her husband was in any way bound for the payment of rent on the family residence, and said:
“‘In preparing the projet of partition, plaintiffs herein appear to have realized that the person to be charged was the master of the community, and caused the whole charge to be made against him, to which he makes no complaint, save as to the rate, insofar as the amount due to the heirs of J. Y. Gilmore are concerned. The executor was in error in addressing himself to Mrs. Harnett upon the subject of the rent, and in assuming that she was in any way bound for it * *
“See also LSA-Civil Code, Art. 120 and Veazey v. Rogers [La.App.], 6 So. 2d 170.
“It is, therefore, my opinion that Mrs. Whitney is in no way bound for the rent here claimed; that Mr. Whitney alone is bound for it; and that since Mr. Whitney is not a co-owner with plaintiffs, the holding in the Juneau case has no application here.”
Let us examine the Gilmore case relied upon by the lower court. We believe that an analysis will show that the holding is in accord with that in the Juneau case. The facts and holding in the Gilmore case [137 L. 162, 68 So. 396] are as follows:
“For some years prior to the death of Mrs. Gilmore she, with her son-in-law, Mr. Harnett, and his wife and child, had been occupying a residence which had belonged to the community that had existed between Mrs. Gilmore and her husband, and Mr. Harnett had paid $25 per month rent, and Mrs. Gilmore had paid a like amount for her board. At Mrs. Gilmore’s death Mrs. Harnett became the owner of a one-fourth interest in the house, and, her husband having previously purchased the one-eighth interest inherited by John Y. Gilmore, Jr., from his father, they together owned three-eighths interest. They remained in the house after the death of Mrs. Gilmore, and were charged $25 per month rent during the first three months, but at the end of that time the executor, through his attorney, wrote a note to Mrs. Har-nett to the effect that the rent should thereafter be $100 per month, of which (in view of her one-fourth interest, and of the executor’s ignorance of the fact that Mr. Harnett had acquired one-eighth interest) she would be expected to pay $75 per month. She received the note in the absence of her *475 husband, and, interpreting it as an exhibition of the ill feeling that existed between the executor and herself, became somewhat excited, and answered at once, saying:
“ ‘We will remain in the house, despite your exorbitant rate of rental. We will be good for the rent and are not ready to be put from the house yet.’
“When, however, her husband was informed of what had taken place, he caused the executor to be notified that he would pay no such amount, and subsequently, and by way of compromise, he offered to pay $65 per month, which offer was not accepted. He and his family continued, however, to remain in the house for some 18 months, and until the executor was ready to sell it, when they moved out. The executor appears to have charged Mrs. Harnett with the entire rental, at the rate demanded by him, one half as due to the heirs of J. Y. Gilmore, and the other half as due to the succession of Mrs. Gilmore; the total amount (including the rental for March, April and May, 1911) being $1,237.50, one-half of which he deducted from her share in the succession. Mrs. Harnett, though not liable for any of the rent, makes no objection to the charge against her in the succession at a reasonable rate, but the uncontradicted evidence is that $65 per month was quite all that the property was worth, and hence the reduction ordered by the judge a quo. In preparing the projet of partition, plaintiffs herein appear to have realized that the person to be charged was the master of the community, and caused'the whole charge to be made against him, to which he makes no complaint, save as to the rate, insofar as the amount due to the heirs of J. Y. Gilmore are concerned. The executor was in error in addressing himself to Mrs. Harnett upon the subject of the rent, and in assuming that she was in any way bound for it, or bound by any supposed contract (repudiated by her husband) concerning it. He was also in error in assuming that by his mere ipse dixit he could impose upon persons occupying the relation to the property that Mr. and Mrs. Harnett occupied the obligation to pay an exorbitant rent. There was, therefore, no error in the ruling of the trial judge.” (Emphasis added.)
Thus we see that the husband and wife in the Gilmore case who were occupying the succession property were co-owners. The wife by virtue of her inheritance and the husband by virtue of purchase, of one-eighth interest from one of the heirs. Under the Juneau case and cases therein cited which are older by far than the case under discussion, neither the husband nor wife owed any rent, because they were both co-owners. However, there is nothing in the law that prohibits a husband co-owner from paying rent or agreeing to pay rent if they so desire. The courts specifically stated that the wife, “though not liable for any of the rent, makes no objection to the charge against her in the succession at a reasonable rate”. She is not liable for any of the rent because she was a co-owner. The husband actually was not liable for any rent had he made the defense that he was a co-owner or had he made the defense that is being made in the case at bar. The court in the Gilmore case particularly stated that the husband made no complaint as to the charge of rent but only to the rate.
There is no doubt but that in the absence of any specific contract by the wife to pay the rent that a debt due under and by virtue of a contract for the rent of a marital home is a debt of the husband as head and master of the community under Article 120 of the LSA-Civil Code, and many authorities which need no citation. However, it is well settled that a wife has the right, not only to bind herself and her separate property for her benefit or for the benefit of a third person, without the authorization of her husband but also to bind herself and her separate property for *476 his benefit. Mathews Bros. v. Bernius, 169 La. 1069, 126 So. 556; Bultman v. Wood, La.App., 168 So. 384; Veazey v. Rogers, supra, 6 So.2d 170.
The legal obligation imposed under Article 120 is personal to the wife. It is imposed by law in conjunction with the marriage contract, and a third party is not privy to this obligation and cannot enforce it. A lease is similar to a sale, as there are three absolutely necessary essentials common to both — the thing, the price, and the consent. Article 2670, LSA-C.C. The relation of landlord and tenant can arise only from contract, either express or implied. See Salter v. Zoder, La.App., 37 So.2d 464. There was no contract either expressed or implied between the plaintiffs herein and the defendant. He was occupying the premises by consent and permission of his wife who was a legal possessor. We have seen that a wife can obligate herself for the benefit of her husband and become responsible for a community debt, such as rent. She could also furnish a home for the husband by virtue of her right to the legal occupancy of the premises in question as a co-owner. It would be a poor rule or law that would not work, so to speak, both ways. For example, if one or all four of these plaintiffs had chosen to occupy the premises in question with their wives, they could not be held liable for rent. By the same yardstick, the wife of the defendant is entitled to occupy the premises without the payment of rent and to have her husband free of any liability.
The case of Veazey v. Rogers, supra, relied upon by the trial judge is not directly applicable but there is a statement that should the wife desire she may take on the obligations imposed upon the husband under Article 120 and make herself personally liable for the rent of the home.
We are therefore of the opinion that defendant’s wife had a perfect right to possess and occupy the home and to have him occupy it with her without any liability for rent, either express or implied under such facts and circumstances, on his part. If the wife could furnish the home for her family to live in by personally contracting and obligating herself for the rent, without any obligation or liability upon the part of the husband, we see no reason why she could not do the same with the home which she inherited in whole or in part as co-owner without any liability attaching to the husband for rent without an agreement on his part, express or implied, to pay rent as such to the other co-owners.
For the above and foregoing reasons the judgment of the district court is hereby reversed and judgment is granted herein for the defendant Gilbert E. Whitney and against the plaintiffs, Eric Chaney, Alder L. Chaney, Joseph E. Chaney and Noel Francis Chaney, dismissing their suit at their cost.