McBRIDE, Judge.
This is a suit to recover an $850 balance on the purchase price of a $1,750 fur coat bought on open account from plaintiff by a married woman in her maiden name while she was living under the same roof with her husband. The testimony shows they were “estranged.” Plaintiff-merchant contends that the purchase, a “necessity,” was sold to the wife for the account of the-community of acquets and gains existing-between the purchaser and her husband, and, therefore, the husband, as head and master of the community, is liable. Plaintiff prays for a judgment against John E.. Ruiz, the husband, and alternatively alleges, that if the court should hold that the husband is not liable, then and in that event a judgment is prayed for against the wife.
The husband was cast in judgment, and he has appealed.
Plaintiff filed an answer to the appeal to which we can give no consideration whatsoever for the reason that the answer was filed more than fifteen days after the return date. C.C.P. art. 2133; Lambert v. Faucheux Chevrolet Company, La.App., 161 So.2d 344; Mentel v. Boston Insurance Co., La.App., 144 So.2d 441.
The facts, as we find them, are: John E. Ruiz maintained an open account with plaintiff on which wearing apparel and supplies purchased for the members of his family were charged. The account was carried in the name of John E. Ruiz or Mrs. John E. Ruiz, the record not being clear on this particular detail. In November, 1960, Ruiz, in writing, requested plaintiff to close the account and to allow no one to make purchases on credit from plaintiff without his specific permission. The account was closed as directed, but, from time to time thereafter, Mrs. Ruiz obtained permission from her husband to charge thereon certain articles purchased for the children. On December 23, 1960, while the Ruiz account was closed and dormant, Mrs. Ruiz, without being authorized by her husband and without his knowledge or consent, bought from plaintiff a three-quarter lenght fur coat for $1,750, and by arrangement with plaintiff, she charged the purchase price on a new account which was then opened in her maiden name, “Mrs. Edith Steele.” There is no question plaintiff’s representatives at the time well knew the identity of Mrs. Ruiz, and, of course, they knew that the Ruiz family account was *663 closed. Plaintiff was instructed by the purchaser not to send any bills or statements to her husband, and none were sent. A witness for plaintiff testified that bills on the Steele account were “withheld” at the request of the customer, but what this means, we do not know. Ruiz did not learn of the Steele account until more than two .years thereafter, and in the meantime, the community of acquets and gains had been dissolved. A noteworthy fact is that Mrs. Ruiz did not give the address of her husband in connection with the Steele account; the address she gave was “care of” her attorney at his office. In the early part of 1961, Mrs. Ruiz made two payments aggregating $950 on her account; Ruiz had no knowledge whatsoever of such payments. Time passed and although the Steele account became badly delinquent, plaintiff neither sent bills to Ruiz nor made .any demands on him for payment. According to a plaintiff witness, “Normal collection efforts directed to Mrs. Ruiz were unsuccessful.” On October 11, 1961, Mrs. Ruiz sued her husband for separation from bed and board and obtained judgment June 25, 1962. Subsequently, the parties were divorced. In late spring of 1963, when they were endeavoring to negotiate .a partition of the community property, Ruiz or his attorney communicated with plaintiff’s office to ascertain if there was anything due on the family account, i. e. the one on which supplies and clothing for the children had been charged. Ruiz was informed of the amount due, but plaintiff made no mention either to Ruiz or to his attorney that there was an account in the name of Mrs. Edith Steele or that plaintiff had a claim against her. Later the attorney representing Ruiz learned of the other account and that there was $850 due on a fur coat. The attorney on behalf of Ruiz disclaimed liability and contended that whatever was due plaintiff was owed by Mrs. Ruiz. The attorney testified: “I just took the position it wasn’t a community debt.” The sizable community estate was partitioned August 19, 1963.
Plaintiff endeavors to hold the husband liable under the provisions of R.C.C. 120 which reads:
“The wife is bound to live with her husband and to follow him wherever he chooses to reside; the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life, in proportion to his means and condition.”
In view of the conclusion we reach, the questions whether a $1,750 fur coat is a “necessary” and whether Ruiz can be said to have neglected to furnish his wife with such are pretermitted.
Appellant’s contention is that plaintiff’s claim is not an obligation óf the community of acquets and gains, hence no liability on his part.
We have carefully read and analyzed the record and hold that the indebtedness cannot be deemed one due by the community. Prom the above resumé of facts, it abundantly appears that the merchant dealt with Mrs. Ruiz in her individual capacity and extended no credit to the husband. If this were not so, why was the account opened in the purchaser’s maiden name and bills “withheld” ? Why was it that the bills were sent to Mrs. Edith Steele care of Mrs. Ruiz’s then attorney? If the coat was sold and delivered on the credit of the husband, it seems strange plaintiff would not have sent the bills to him. Stranger still is the circumstance that although the account remained in a delinquent state for two and one-half years, plaintiff made no attempt whatsoever to contact, communicate with or to collect from Ruiz. A suspicious circumstance insofar as plaintiff is concerned, and one that cannot be disregarded is that it was only after the parties were divorced that plaintiff demanded payment from the husband. This belated attempt to pursue him in the light of the attending circumstances was nothing more than an afterthought on plaintiff’s part.
*664 On many occasions R.C.C. art. 120 lias come in for consideration by the courts. Under the holding's in the cases where the articles supplied the wife are such as the husband should have provided “for the convenience of life, in proportion to his means and condition,” and it appears the husband failed to furnish those articles, the seller to the wife may recover from the husband therefor if he furnished them under the belief that he was doing so on the credit of the husband. Keller Zander v. Copeland, La.App., 196 So. 527 (cert. denied); D. H. Holmes Co., Ltd., v. Morris, 188 La. 431, 177 So. 417, 114 A.L.R. 905; Schaeffer v. Trascher, 165 La. 315, 115 So. 575; Van Horn v. Arantes, 116 La. 130, 40 So. 592; D. H. Holmes Co., Limited v. Huth, La.App., 49 So.2d 875.
The facts in the instant case are almost identical to those in Keller Zander v. Copeland, supra. There a woman, after remarriage, maintained for a number of years a charge account in the plaintiff-store in her husband’s name (La Riviere). She likewise had a charge account which she carried under the name “Mrs. M. Copeland,” her former married name. She made some purchases of clothing which were charged to the latter account. Statements were sent out by the plainiff addressed to her, and it was only sometime later when the wife failed to pay that the plaintiff took the position her husband was liable. The court rejected the claim against the husband saying:
“Conceding that the wearing apparel purchased by the defendant’s wife would ordinarily be considered to be necessaries, we have no hesitancy in holding that, under the foregoing facts, Mr. La Riviere is not responsible. The credit was never extended by the plaintiff company to defendant’s wife on the belief that Mr. La Riviere would be held. On the contrary, the goods were charged to the account of Mrs. M. Copeland just as other articles had been charged to her account in the past and it was only after the plaintiff discovered that she was hot going to pay her bill that it belatedly took the position that Mr. La Riviere was liable.”
Plaintiff contends Ruiz knew of his wife’s purchase of the coat becattse on numerous occasions he saw her wearing it and on one occasion during an argument accused her of having paid $10,000 for the garment. The husband makes a vehement denial of the wife’s statements. Even assuming arguendo that the husband did see the wife wear the coat and accused her of paying $10,000 for it, these facts alone are insufficient to impress liability on the husband. Mrs. Ruiz never at any time apprised him of her account at plaintiffs store. Our predecessors said in Cohn Company, Ltd., v. Lazarus, 13 Orl.App. 478:
“ * * * The incident that the goods were delivered to her or that the articles of personal apparel were presumably worn by her in her husband’s presence, does not suffice as proof of his express or implied concurrence and furnishes no indication that he knew when, from whom or upon what terms the purchases were effected.”
Appearing on the inventory made in connection with the partition is an item of a fur coat appraised at $400, and it is contended by plaintiff that the placing of said notation on the inventory had the effect of a ratification by the husband of the wife’s transaction. We do not think so as the listing on the inventory is of no significance and was likely to go unnoticed by the husband as there was no identification of the coat. The wife had another fur coat and other fur pieces, and from the description alone, we are sure the husband could not tell what fur coat the inventory referred to.
Plaintiff also maintains that Ruiz specifically bound himself because, in connection with the partition of the property, he “agreed to the assumption and payment *665 of all community debts and obligations of the community, known and unknown * Said assumption does not embrace the debt plaintiff sues for for the simple reason that the same never was a community debt within comtemplation of the assumption.
For the reasons above assigned, that portion of the judgment appealed from running in favor of plaintiff and against appellant John E. Ruiz is reversed, and the judgment is amended so as to provide that the demands of plaintiff against appellant be dismissed at plaintiff’s costs, and as thus amended and in all other respects the judgment appealed from is affirmed.
Reversed in part, amended and affirmed.