206 So.2d 779 (1968)
Lawrence JACKSON et al., Plaintiffs-Appellants,
v.
Robert E. HANNA et al., Defendants-Appellees.
No. 10930.
Court of Appeal of Louisiana, Second Circuit.
January 11, 1968.
*781 Howell H. Heard, West Monroe, for appellants.
McHenry, Snellings, Breard, Sartor & Shafto, Monroe, for appellees Robert E. Hanna, Jr., and another.
Gilbert T. Brown, Jr., Monroe, for absent defendants.
Coon & Coon, Monroe, for Jake McMillan, and another.
Clarence A. Frost, Reserve, for appellee, Texaco Co.
Betty Ruth Chisley, not represented.
Before GLADNEY, AYRES and BOLIN, JJ.
GLADNEY, Judge.
The plaintiffs, tracing their title claims to their ancestor, Polly Jackson, petition for a declaratory judgment determining the ownership of a tract of land situated in Ouachita Parish and declaring they be recognized as owners of an undivided 31/64ths interest therein free of encumbrance from an oil and gas lease granted to Texaco, Inc. by Robert E. Hanna, Jr. and his wife, the principal defendants. The trial court denied the claims of plaintiffs who have appealed.
In this court appellees have filed answers to the appeal praying for an affirmance of the judgment insofar as it relates to their plea of peremption of five years prescribed by Article 10, Section 11 of the Constitution of 1921, and further ask that the decree be modified to sustain special pleas of prescription of 10 and 30 years based on LSA-C.C. Arts. 3474, 3478, 1030 and 3548, as to which, special pleas have been filed in this court.
In accordance with an order issued by this court Willie Jackson as provisional administrator of the Succession of Curtis Jackson, has become substituted as a party plaintiff in lieu of Curtis Jackson, deceased.
The following described tract of land is involved:
The West Half of the Northwest Quarter and the North Half of the Southwest Quarter of Section 24, Township 17, North Range 2 East.
In argument and brief plaintiffs indicate they have abandoned any claim to the Northeast Quarter of the Southwest Quarter of said property.
Certain facts are firmly established by the evidence. Polly Jackson married Charlie Jackson December 4, 1872. She died intestate January 8, 1921, survived by her husband and eight children, one of whom predeceased Charlie Jackson. The land in 1901 was patented by the United States to Charlie Jackson and became a part of the community of acquets and gains existing between Charlie Jackson and Polly Jackson. Subsequent to the death of Polly Jackson, Charlie Jackson remarried and on January 12, 1925, with his second wife, executed a special mortgage on all of the property. In foreclosure proceedings on this mortgage the property was purchased by J. R. Tidwell, the sale being evidenced by a sheriff's deed dated September 3, 1935. Thereafter the land was regularly assessed to Tidwell but on July 5, 1938, it was sold to Robert E. Hanna at tax sale for the state and parish taxes for the year 1937. More than 5 years had elapsed from the date of the *782 tax sale when on February 23, 1944, Hanna conveyed the property to J. R. Tidwell.
Prior to Tidwell's death in 1955 he sold the aforementioned Northeast Quarter of the Southwest Quarter of Section 24, and his widow acquired title to the remaining 120 acres, the property in actual dispute, which Mrs. Tidwell by an act of donation transferred to appellees, Robert E. Hanna, Jr. and his wife, Martha Garrett Hanna. Prior to the institution of this suit on August 16, 1965, plaintiffs were judicially placed in possession of the estate of Polly Jackson and executed certain acts of renunciation of the Succession of Charlie Jackson.
The trial court rendered judgment recognizing the defendants and their assigns as owners of the land herein involved, resting its decision solely on the Constitutional peremption of five years applicable to tax sales. The opinion of the judge analyzed pertinent provisions of the Louisiana Constitutions of 1879, 1898, 1913, and 1921 in the light of our jurisprudence.
"It is this Court's conclusion that the Constitutional Convention of 1898 intended that tax deeds be given absolute validity other than those two exceptions spelled out in the Constitution. This provision was adopted by subsequent conventions of 1913 and 1921. Additionally, the 1921 Constitution provides for a longer period of redemption and a longer period of peremption. The difference in redemption and peremption must be constantly kept in mind in reading the cases which have effect upon the issue presented herein. Also one must constantly keep in mind under which provision of law the cases are decided, whether it be by legislative act or under constitutional provision. It is further necessary to be mindful under which constitution the cases are decided.
"In the instant case the property in dispute was sold at tax sale while in the name of J. R. Tidwell as record owner under a previous sheriff's deed. The property was purchased by R. E. Hanna. After more than five years had elapsed, Mr. Hanna sold the property back to Mr. Tidwell. In the deed it is stated: `This quit claim and redemption is made without any warranty of recourse of any nature or kind, the intent hereof being only to redeem said property from the effect of the aforesaid tax sale.'
"Plaintiff contends that this language in the deed makes the deed a redemption and cites Montgomery v. Whitfield[1] and Spears v. Spears.[2] These cases are not apropos since they were decided under other law, upon other grounds, and under differing facts. This Court is of the opinion that the parties to a deed after tax sale and peremption can not change the nature of the title established by the instrument under the Constitution of 1921. After five years, unless the tax debtor sets aside the tax sale for reasons peculiar and particular to him, or unless there is fraud of such a nature as to bring equity into play, the provision by the Constitution that the tax sale is an absolute vestment of inchoate title is prevailing and the parties cannot perfect or effect a redemptive title. If in fact they wish to return the property to the former actual owners, they may do so by naming same. After the peremptive period of five years, the purchaser from the tax adjudicatee takes in his name and those who look at the record need look no further and no one else can benefit as owner under the deed from the tax adjudicatee except his vendees.
"In the instant case there is no allegation of fraud. There is no claim of irregularities which do not expire within the five year period provided for attack upon the tax sale. There is in fact no attack upon the tax sale itself. There is no proof of fraud or attempt to improve title through tax sale. There is no allegation that the tax debtor remained in possession and if there were, the tax debtor is the only one who can claim this benefit. Charlie Jackson and the Polly Jackson heirs were not tax debtors. *783 Any claim of continued possession by them will not interrupt or defeat peremption.
"The plaintiffs in the instant case claim, as heirs of a record owner, Mary Polly Adams Jackson, because her interest could not have been transferred at the sheriff's sale under mortgage executed by Charles Jackson after her death. They further claim that the heirs of Mary Polly Adams Jackson, who happen also to be the heirs of Charles Jackson, along with Charles Jackson, remained upon the property from the time of the Sheriff's sale up to and through the tax salein fact, they claim possession of the property to date. Their claim as continued possessors cannot prevail or even have bearing upon the issue herein.
"Their possession cannot prevail against the tax adjudicatee from a tax debtor who is a stranger to them. The only benefit their possession may be to them is under a plea of adverse possession under the provisions of prescription `acquirenda causa' of thirty years. The peremption period provided after the tax sale is prescription `liberandi causa' and it does not require physical, corporeal possession. It does require that the person claiming under tax deed, in order to hold against the tax debtor and not have the period of peremption interrupted to dispossess or remove the tax debtor. However, the interruption in favor of the tax debtor cannot be claimed by the Jackson heirs herein as they are strangers to the tax debtor.
"The Jacksons have not pleaded their right to hold this property as adverse owners under prescriptive title. They have not proven their possession of this property continuously, uninterruptedly and completely for the period necessary to sustain such a contention. The Jackson heirs who have remained upon the property have done so by the gratuity of the Tidwells and Hannas. Their possession has not been adverse to these owners and if adverse could not be of any avail to them since this Court finds that the adjudication for taxes and elapse of more than five years created a new and complete title as to the world and particularly as to the Jackson heirs. * * *"
The principal issue presented in this case arises under LSA-Const. Art. 10, § 11, as amended by Acts 1927, Ex.Sess. No. 4; and Acts 1932, No. 147, the pertinent provisions thereof being:
"* * * The sale shall be without appraisement and the property sold shall be redeemable at any time during three years from date of recordation of the tax sale, by paying the price given, including costs and five per cent penalty thereon, with interest at the rate of one per cent per month until redeemed * * *
"No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within five years from the date of the recordation of the tax deed, if no notice is given. * * *"
Under the 1932 amendment property was made redeemable at any time during "three years" instead of "one year" from date of the tax sale, and it was required that proceedings be instituted within "five" instead of "three" years from the date of the recordation of the tax deed, if no notice is given. Justice Provosty in Hirst v. Xeter Realty, 138 La. 398, 70 So. 339 (1915) decided a case which occurred prior to the present Constitution provision, gave this reason for the creation for the peremptive period:
"* * * The said constitutional provision does not mention the case of a tax debtor thus in actual possession among the exceptions to the rule which it establishes; but this court thought that to include him within it would be so glaringly inequitable that the framers of the Constitution could not have meant to do so; that the framers of the Constitution *784 could hardly have meant to go against the legal principle above mentioned, which is fundamental in the law of prescriptionof universal jurisprudence, and as old as the law itself. Except, therefore, when the tax debtor has been in actual possession, or in the cases of double assessment and prior payment of the tax, and, no doubt, of fraud, which strikes down everything, the sole question must be whether there has been a tax sale. When there has been one, the tax debtor must bring his nullity suit within the three years, or else never. Such are the express and explicit terms of the said constitutional provision. This court went very far when it created an exception in favor of the tax debtor in actual possession. It can go no further than this, and hold that although the Constitution makes no mention of possession by the tax purchaser being necessary, but, on the contrary, uses very plain language excluding such an implication, nevertheless possession is necessary. Former efforts on the part of the lawmakers of the state to validate tax sales by prescribing a term within which the suit to set them aside should be brought, had proved ineffective, because of one cause or another which the courts had recognized, and the object and purpose of the framers of the Constitution of 1898 was to put an end to all such niceties and distinctions, and by one broad sweep of constitutional provision to validate, after the expiration of the prescriptive period, every tax sale theretofore or thereafter made, no matter what might be the irregularities or nullities affecting it, excepting only in the two cases specifically mentioned. That such was the object and purpose of this provision is matter of common knowledge. See, to that effect, the remarks of this court in Terry v. Heisen, 115 La. [1070,] 1075, 40 So. 461, Doyle v. Negrotto, 124 La. 100, 104, 49 So. 992, and Ashley [Co.] v. Bradford, 109 La. [641,] 654, 33 South. 634, where, by the way, it was held that a provision of this sweeping character is within the powers of a constitutional convention * * *" 70 So. 338, 340, 341.
The distinction between prescription and peremption is set forth clearly in the Succession of Pizzillo, 223 La. 328, 65 So.2d 783:
"* * * The difference between prescription and peremption is that the former simply bars the remedy whereas, in the latter, time is made of essence of the right granted and a lapse of the statutory period operates as a complete extinguishment of the right. Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899; Brister v. Wray-Dickinson Co., 183 La. 562, 164 So. 415 and Collier v. Marks, 220 La. 521, 57 So.2d 43. Peremption admits of no interruption or suspension; performance of the required act must be accomplished within the specified time or else the right of action no longer exists." 65 So. 2d 783, 786.
The exceptions of peremption which may arise under the constitutional provision are set forth in a great number of cases found in our jurisprudence which recognizes only three causes for which a debtor may set aside a sale of property for taxes after the lapse of five years after date of registration of the tax deed and these are: prior payment of taxes, continued physical possession by the debtor, and no assessment. Choate v. O'Brien, La.App., 163 So.2d 157 (4th Cir.1964); Ewald v. Hodges, 239 La. 883, 120 So.2d 465 (1960); Mansfield Hardwood Lumber Company v. Butler, 234 La. 322, 99 So.2d 129 (1958); Staring v. Grace, La.App., 97 So.2d 669 (1st Cir.1957); Stone v. Kimball's Heirs, 199 La. 240, 5 So.2d 758 (1942); Ward v. South Coast Corporation, 198 La. 433, 3 So.2d 689 (1941); Close v. Rowan, 171 La. 263, 130 So. 350 (1930).
It is recognized that the peremptive period of five years may be interrupted by the actual possession of the record owner. The rule governing this exception to the five year peremption is found in Magnolia *785 Petroleum Company v. Marks, 225 La. 805, 74 So.2d 36 (1954):
"* * * In order for possession to interrupt the constitutional peremption of Article X, § 11 of the Constitution of 1921, such possession must be a constant objection to the tax sale. Kivlen v. Horvath, 163 La. 901, 113 So. 140; Pierson v. Castell Land & Harbor Co., Inc., 159 La. 158, 105 So. 274; Pill v. Morgan, 186 La. 329, 172 So. 409; DiGiovanni v. Cortinas, 216 La. 687, 44 So.2d 818; and Thurmon v. Hogg, 225 La. 263, 72 So.2d 500.

* * * * * *
"In short, after the lapse of the redemptive period, a tax deed which is regular and in proper form, based upon an actual assessment, conveys a complete and perfect title to the tax adjudicate as to the world. Under such circumstances, the origin of this complete and perfect title may correctly be said to date from the tax deed, and antecedent defects or missing links in the title become immaterial, or, as stated in Frederick v. Goodbee, 120 La. 783, 45 So. 606, 608, `all prior claims in, to, or against the property are cut off and divested.' 74 So.2d 36, 41, 42.
The kind of possession indicated is described in Kirn v. Pierce, La.App., 102 So.2d 90, (Orl. Cir.1958):
"Our view is that the possession required to prevent the accruing of the five-year peremption for attacking a tax deed must be open, actual and corporeal, and of such a character as to be considered by the law a continuous protest against the tax sale; it should be of that character as would constitute the basis of the prescription of ten years. Board of Com'rs for Atchafalaya Basin Levee Dist. v. Sperling, 205 La. 494, 17 So.2d 720; Kuhn v. Sandefur, La.App., 28 So.2d 515." 102 So.2d 90, 92.
An additional requirement of the rule as to possession is that the constitutional peremption applies to tax sales except where the tax debtor remains in corporeal possession of the premises. The rule is stated in King v. Moresi, 223 La. 54, 64 So.2d 841 wherein the court likewise made this comment:
"* * * This constitutional provision announces the public policy of this State to set at rest tax titles once and for all." 64 So.2d 841, 842.
In the case of Stevens v. Johnson, 230 La. 101, 87 So.2d 743 (1956) Nelson Burk was the owner of the property in 1936. It was put up for tax sale for the unpaid 1936 taxes and purchased in the name of one Travis Campbell. The property was again sold for the unpaid 1937 taxes. This time the property was purchased by one Metz Abbitt, after being assessed in the name of Travis Campbell. Accordingly, Nelson Burk was not the record tax debtor and the court refused to sustain the plea that Nelson Burk had physical possession of the property until 1946, the court reasoning that Nelson Burk was not possessing as the record owner, and that this infirmity in Abbitt's title was cured by the peremption of five years, the court citing these cases: Meshell v. Bauer, 215 La. 619, 41 So.2d 237 (1949); Succession of Terrell v. Buckner, La.App., 176 So. 666 (2nd Cir.1937); Prampin v. Southern Chemical Works, Inc., La.App., 53 So.2d 210 (Orl. Cir.1951); Ward v. South Coast Corporation, 198 La. 433, 3 So.2d 689 (1941).
The same rule was recognized in Esso Standard Oil Company v. Jordan, 231 La. 594, 92 So.2d 377 (1957) where it was stated:
"It has long been the recognized jurisprudence of this state that the delinquent tax debtor to whom notice of delinquency must be given is the last record owner, the only one entitled thereto. Griffing v. Taft, 151 La. 442, 91 So. 832; Kivlen v. Horvath, 163 La. 901, 113 So. 140; Spears v. Spears, supra." 92 So.2d 377, 381.
*786 Continuing, the court in Esso Standard Company v. Jordan, supra, quoted from Gilmer v. Stinson, La.App., 197 So. 299, 303:
"If the law was otherwise than as announced in these cases, confidence in titles based on tax sales would largely be destroyed because their stability as muniments of title would be undermined. A purchaser at tax sale could not feel secure in his title until the lapse of five years. Heirs and others to whom not assessed, could, as is attempted in this case, come into court and recover the property and thereby create confusion and difficulties in the way of adjustments for improvements, rents, etc., simply because notice of delinquency, etc., was not served on them. The law does not encourage nor countenance such possibilities. On the contrary, its policy is to bolster the prima facie evidence of validity which the Constitution declares should be accorded to tax sales.' 92 So.2d 377, 382.
Applicable also in the instant case is the rule pertaining to the law of registry by reason of which a purchaser of real estate in good faith from the owner of record and without notice cannot be affected by latent acts and secret rights which may have existed in favor of former owners of the property dehors the public records. Bell v. Canal Bank & Trust Company, 193 La. 142, 190 So. 359 (1939).
Reverting to the facts as hereinabove stated, it is recalled that J. R. Tidwell became the owner of the property by purchasing it in its entirety at a mortgage foreclosure sale on September 3, 1935. He was never an owner under a common title with any of the plaintiffs herein who indeed were not record owners of any sort until August 19, 1965 when plaintiffs were judicially placed in possession of the estate of Polly Jackson. On July 5, 1938 Robert E. Hanna purchased the property at a tax sale for the taxes for the year 1937. After the lapse of more than five years Hanna on February 23, 1944 conveyed the property to J. R. Tidwell.
It is earnestly argued that by virtue of the conveyance of Hanna to Tidwell an act of redemption was effected which eradicated the tax sale of July 5, 1938. It is plain that none of the plaintiffs were record owners nor tax debtors. Accordingly, under the principles above stated, they cannot claim the benefit of a redemption deed. A fortiori, the conveyance of Hanna to Tidwell was made after the peremption period had accrued. Opposing this position, plaintiffs have cited Spears v. Spears, supra. Reference to this case reveals that it is inapposite for the reason that the redemption occurred immediately after the year of redemption had expired and prior to the accrual of the three year peremptive period then in effect.
Further comment concerns the type of possession assertedly exercised by some of the Jackson heirs, particularly as to Jesse Jackson and Bishop Jackson. Jesse Jackson was the father of Bishop Jackson and died in 1959. Bishop Jackson testified that subsequent to his father's death he did spend two or three nights a week in the house, and that after Curtis Jackson had moved off of this property in 1940, Jesse Jackson and his family were the only ones left on the property. Initial testimony from the Jackson heirs and the defendants disclose that Jesse Jackson had remained on the property by sufferance of Mr. Tidwell. The Jacksons paid no taxes and during the long period of time evidenced no hostility to the physical possession and farming operations carried on on the place by Tidwell. The situation is similar to that which occurred in the Succession of Seals, 243 La. 1056, 150 So.2d 13 (1963):
"The synopsis of the testimony states that some of the defendants considered the sixty acres herein involved as `heir property.' If they did consider the property as such, they maintained an attitude of indifference (as found by the trial judge) and remained inactive during the period *787 that the adverse or hostile possession of Stoke Seals was accruing. If Stokes Seals was indulgent in not collecting rent at times and in granting favors, his actions were purely beneficial; he manifested no intention of abandoning his adverse possession. These heirs never asserted any real claim to the sixty acres herein involved until they were ruled into court by the widow and adopted daughter of Stokes Seals. In fact, hostility and good faith on the part of Stokes Seals and the indifference of the defendants, as found by the trial judge, are so enmeshed as to preclude their being recognized as owners of the property." 150 So.2d 13, 21.
The court further observed and quoted Lafitte, Dufilho & Company v. Godchaux, 35 La.Ann. 1161, 1163:
`* * * The genius of our law does not favor the claims of those who have long slept on their rights and who, after years of inertia, conveying an assurance of acquiescence in a given state of things, suddenly wake up at the welcome vision of an unexpected advantage and invoke the aid of the courts for relief, under the effect of a newly discovered technical error in some ancient transaction or settlement.' 150 So.2d 13, 21.
The facts of the instant case disclose no cause of interruption of the five year constitutional peremption. No attack for irregularity has been shown by plaintiffs upon the tax sale. Accordingly, we sustain, as did the trial judge, the five year peremption plead on behalf of defendants.
The answer to the appeal filed in this court on behalf of the appellees relating to their pleas of prescription of ten and thirty years may not be considered for the reason that the answer was filed more than fifteen days after the return date of the Transcript in this case. LSA-C.C.P. art. 2133; Leon Godchaux Clothing Co. v. Ruiz, La.App., 179 So.2d 661 (4th Cir.1965); Lambert v. Faucheux Chevrolet Company, La.App., 161 So.2d 344 (4th Cir.1964); Mentel v. Boston Insurance Company, La.App., 144 So.2d 441 (4th Cir.1962).
However, as counsel have separately filed the peremptory exceptions of prescription in this court, we must give consideration to these pleas under LSA-C.C.P. art. 2163 which provides:
"The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.
"If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception."
The peremptory plea of prescription of thirty years is found in Arts. 1030 and 3548 of the Civil Code. These provide:
Civil Code Article 1030:
The faculty of accepting or renouncing a succession becomes barred by the lapse of time required for the longest prescription of the rights to immovables.
Civil Code Article 3548:
All actions for immovable property, or for an entire estate, as a succession, are prescribed by thirty years.
It is conceded that suit was instituted herein less than thirty years from the acquisition of the property by Tidwell in 1935. Therefore, under Articles 1030 and 3548 the prescription is liberative and must fail for the reason stated.
The affirmative defense of ten years prescription "acquirenda causa" is based on Article 3487 of the Civil Code which requires:
"1. That the possessor shall have held the thing in fact and in right, as owner; *788 when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporeal possession.
"2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possesor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription."
The evidence discloses that after purchasing the property in 1935 Tidwell went into possession thereof and joined it with the place he had acquired from Charlie Jackson. He continued to pay taxes on the property except for the period affected by the tax sale. Plaintiffs paid no taxes thereon nor did they appear upon the assessment records. Tidwell and Hanna executed leases on the two places, gave a right of way to the United States for army maneuvers; cotton allotments were awarded to Tidwell under the 1954-56 program and included the entire 320 acres. Tidwell subdivided and sold 40 acres in 10 acre tracts and continued to treat both pieces of property as one tract owned by him, placing them under fence and regularly farming the same. During this period of time and even prior to the acquisition by Tidwell, Jesse Jackson, who died in 1959 at approximately 90 years of age, lived on the property. Subsequently his son stayed at his father's house on the place and continued thereon after his father died for some time. The possession by Jesse Jackson and Bishop Jackson, however, was by sufferance from Tidwell and Hanna, who permitted the elderly negro to remain in the house which had been his home. Curtis Jackson, one of the children of Charlie Jackson, had moved from the place in 1940 and after that it was acknowledged that other than the Jesse Jackson family none of plaintiffs stayed on the place and the Jesse Jackson family remained by sufferance of Tidwell. After weighing the evidence it is our conclusion that plaintiff has established in keeping with Article 3487, his ten year prescription. Accordingly, we disagree with the finding of the trial court in overruling this plea filed on behalf of the defendants.
By way of summation, the holding of this court is that the judgment of the trial court is modified only as to its ruling with respect to the peremptory exception of prescription of ten years, which this court sustains. Otherwise, the judgment is affirmed in all other respects.
It is further ordered, adjudged and decreed that the plaintiffs and alleged heirs of Mary Polly Adams Jackson, as such, and those claiming to hold under them, and particularly Curtis Jackson, Evelyn Evans Jackson, Ellis Jackson, Lunie Jackson, O. C. Jackson, Dorothy Lee Williams, Bishop Jackson, T. P. Jackson, Dave Jackson, Alberta Williams Kirt, Donald Ray Kirt, Louis James Williams, Ira Jackson, Jr., Andrew Jackson, Kenneth Jackson, Jesse Jackson, Dorothy Mae Jackson Wiley, Chester Jackson, O. B. Jackson, Levi Jackson, Jr., Mary Frances Jackson Harris, Clarence Jackson, Betty Jackson Smith, Lester Jackson, Joe Jackson, John Jesse Jackson, Emma Louise Jackson, H. B. Williams, Piccola Jackson Hardy, Wilbur Jackson, Rachel Jackson Taylor, as Provisional Administratrix of the Succession of Lawrence Jackson and Howell H. Heard, have no right, title or interest in or to the following described property, situated in the Parish of Ouachita, State of Louisiana, to-wit:
The West Half of the Northwest Quarter (W/2 of NW/4) and the North Half of the Southwest Quarter (N/2 of SW/4) of Section Twenty-four (24). Township Seventeen (17) North, Range Two (2) East, containing 161.97 acres of land, more or less.
*789 It is further ordered, adjudged and decreed that the titles of those parties holding under and as successors in title to the late J. R. Tidwell, and Mamie Larche Tidwell, and particularly Robert E. Hanna, Jr., Martha Garrett Hanna (Texaco, Inc., as lessee of Robert E. Hanna, Jr. and Martha Garrett Hanna, and J. E. Murphy, as purchaser of timber from Robert E. Hanna, Jr. and Martha Garrett Hanna), Jake McMillan, Irma Jean Evans McMillan, Betty Ruth Osborne Chisley, Earline Sapp Williams, Thomas Lee Williams, and Evelyn Evans Jackson, all being successors in title under the said late J. R. Tidwell and Mamie Larche Tidwell, in and to the above described property, and particularly the portions thereof hereafter described, be and the same are hereby recognized and confirmed.
It is further ordered, adjudged and decreed that the title of Robert E. Hanna, Jr. and Martha Garrett Hanna to the following described tract of land situated in the Parish of Ouachita, State of Louisiana, in its entirety, as to all other parties, plaintiff and defendant, to this suit, be and the same is hereby confirmed, said tract of land being, to-wit:
The West Half of the Northwest Quarter (W/2 of NW/4) and the Northwest Quarter of the Southwest Quarter (NW/4 of SW/4 of Section Twenty-four (24), Township Seventeen (17) North, Range Two (2) East.
It is further ordered, adjudged and decreed that the title of Jake McMillan as against all other parties plaintiff and defendant to this suit to the following described tract of land situated in the Parish of Ouachita, State of Louisiana, be and the same is hereby confirmed, to-wit:
A certain tract or parcel of land situated and being in the Northeast Quarter of the Southwest Quarter (NE/4 of SW/4), Section Twenty-four (24), Township Seventeen (17) North, Range Two (2) East, particularly described as follows:
Commencing at the southwest corner of said forty, and running thence east along the south line thereof a distance of 891 feet, thence north in a line parallel to the west line of said forty a distance of 489 feet; thence west in a line parallel to the south line of said forty a distance of 891 feet to the west line thereof, thence south along the west line of said forty a distance of 489 feet to the place of beginning, containing 10 acres, more or less.
It is further ordered, adjudged and decreed that the title of Betty Ruth Osborne Chisley as against all other parties plaintiff and defendant to this suit be and the same is hereby confirmed as to the following described tract of land, situated in the Parish of Ouachita, State of Louisiana, to-wit:
A certain tract or parcel of land situated and being in the Northeast Quarter of the Southwest Quarter (NE/4 of SW/4), Section Twenty-four (24), Township Seventeen (17) North, Range Two (2) East, particularly described as follows:
From a point on the west line of said forty which is 976 feet north of the southwest corner thereof, run north along the west line of said forty a distance of 342 feet, more or less, to the northwest corner of said forty, thence east along the north line of said forty a distance of 891 feet, thence south in a line parallel to the west line of said forty, a distance of 342 feet, more or less, to the northeast corner of the tract sold by this vendor to Irma Jean Sapp as per deed in Conveyance Book 327, page 93, thence west along the north line of said tract sold to Irma Jean Sapp as aforesaid, a distance of 891 feet to place of beginning, containing 7 acres, more or less.
It is further ordered, adjudged and decreed that the title of Irma Jean Evans *790 McMillan as against all other parties plaintiff and defendant to this suit be and the same is hereby confirmed as to the following described tract of land, situated in the Parish of Ouachita, State of Louisiana, to-wit:
A certain tract or parcel of land situated and being in the Northeast Quarter of the Southwest Quarter (NE/4 of SW/4), Section Twenty-four (24), Township, Seventeen (17) North, Range Two (2), East, particularly described as follows:
Commencing at a point on the west line of said forty, which is 489 feet north of the southwest corner thereof, and running thence east in a line parallel to the south line of said forty a distance of 891 feet, thence north in a line parallel to the west line of said forty a distance of 489 feet, thence west in a line parallel to the south line of said forty a distance of 891 feet to the west line thereof, thence south along the west line of said forty a distance of 489 feet to the place of beginning, containing 10 acres, more or less; LESS AND EXCEPT a tract described as follows:
From the southwest corner of said Northeast Quarter of Southwest Quarter (NE/4 of SW/4) of said Section Twenty-four (24), run north along the west line of said Northeast Quarter of Southwest Quarter (NE/4 of SW/4) a distance of 891 feet; thence run east parallel with the south line of said Northeast Quarter of Southwest Quarter (NE/4 of SW/4) a distance of 750 feet, more or less, to the west line of Puckett Lake Gravel Road and the point of beginning; thence from said point of beginning run southerly along the west line of said road a distance of 110 feet; thence run back westerly between parallel lines parallel to the south line of Northeast Quarter of Southwest Quarter (NE/4 of SW/4) a depth and distance of 396 feet, and containing 1 acre, more or less.
It is further ordered, adjudged and decreed that the title of Earline Sapp Williams and Thomas Lee Williams, as against all other parties plaintiff and defendant to this suit, be and the same is hereby confirmed as to the following described tract of land, situated in the Parish of Ouachita, State of Louisiana, to-wit:
A certain lot or parcel of ground situated in the Northeast Quarter of Southwest Quarter (NE/4 of SW/4) of Section Twenty-four (24), Township Seventeen (17) North, Range Two (2) East, Ouachita Parish, Louisiana, being more particularly described as follows:
From the southwest corner of said Northeast Quarter of Southwest Quarter (NE/4 of SW/4) of said Section Twenty-four (24), run north along the west line of said Northeast Quarter of Southwest Quarter (NE/4 of SW/4) a distance of 891 feet; thence run east parallel with the south line of said Northeast Quarter of Southwest Quarter (NE/4 of SW/4) a distance of 750 feet, more or less, to the west line of Puckett Lake Gravel Road and the point of beginning; thence from said point of beginning run southerly along the west line of said road a distance of 110 feet; thence run back westerly between parallel lines parallel to the south line of Northeast Quarter of Southwest Quarter (NE/4 of SW/4) a depth and distance of 396 feet, and containing 1 acre, more or less.
It is further ordered, adjudged and decreed that the title of Evelyn Evans Jackson as to all other parties plaintiff and defendant in this suit, be and the same is hereby confirmed as to the following described *791 tract of land situated in the Parish of Ouachita, State of Louisiana, to-wit:
A certain tract or parcel of land situated and being in the Northeast Quarter of the Southwest Quarter (NE/4 of of SW/4) Section Twenty-four (24) Township Seventeen (17) North, Range Two (2) East, particularly described as follows:
Commencing at a point on the south line of said forty which is 891 feet east of the southwest corner thereof, thence north in a line parallel to the west line of said forty a distance of 1320 feet, more or less, to the north line of said forty, thence east, along the north line of said forty, a distance of 429 feet, more or less, to the northeast corner thereof, thence south along the east line of said forty a distance of 1320 feet, more or less, to the southeast corner thereof, thence west along the south line of said forty a distance of 429 feet, more or less, to the place of beginning, and containing 13 acres, more or less.
It is further ordered, adjudged and decreed that the title of Texaco, Inc. as lessee under that certain oil and gas lease executed by Robert E. Hanna, Jr. and Martha Garrett Hanna, dated January 12, 1965, of record in Conveyance Book 824, page 726, as to all other parties plaintiff and defendant to this suit, be and the same is hereby confirmed as to the following described tract of land situated in the Parish of Ouachita, State of Louisiana, to-wit:
The West Half of the Northwest Quarter (W/2 of NW/4) and the Northwest Quarter of the Southwest Quarter (NW/4 of SW/4) of Section Twenty-four (24), Township Seventeen (17) North, Range Two (2) East.
It is further ordered that the judgment from which appealed is affirmed subject to the modification that the plea of prescription of ten years as filed on behalf of appellees is hereby sustained and plaintiffs' demands rejected at their cost.
NOTES
[1] 41 La.Ann. 649, 6 So. 224 (1889).
[2] 173 La. 294, 136 So. 614 (1931).